# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

---

Desmond Fielding,                    U.S. District Court File No.:_____

      Plaintiff,

v.

Allina Health System,

      Defendant.

---

PLAINTIFF'S COMPLAINT FOR:

### Federal violations

1) Race Discrimination in Violation of 42 U.S.C. § 2000e, et seq., as amended
2) Color Discrimination in violation of 42 U.S.C. § 2000e, et seq., as amended
3) National Origin Discrimination in violation of 42 U.S.C. § 2000e, et seq., as amended

### State of Minnesota Violations

4) Race Discrimination in violation of Minn. Stat. §363A.08, et seq., as amended;
5) Color Discrimination in violation of Minn. Stat. §363A.08, et seq., as amended;
6) National Origin Discrimination in violation of Minn. Stat. §363A.08, et seq., as amended;
7) Wrongful interference with Economic Advantage

1

NATURE OF THE CASE

This is an action brought by Plaintiff Desmond Fielding, a United States citizen and resident of the state of Minnesota (herein after "Fielding" or "Plaintiff") against Allina Health Systems, a non-profit domestic corporation.

JURISDICTION

1.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, [Federal Question]; statutory authority, 42 U.S.C. §2000e, *et seq*., as amended, and 28 U.S.C. §1367(a) [Supplemental Jurisdiction] of this Court. The matter in controversy exceeds, exclusive of interest, $75,000.

2.    The Court has jurisdiction over claims arising under Minnesota state law pursuant to its pendent jurisdiction and 28 U.S.C. §1367(a).  The claims arising under Minnesota state law and the claims arising under federal law arise from the same case or controversy, and they have a common nucleus of operative fact.

VENUE

3.    Venue in this Court is proper pursuant to 28 U.S.C. §1391(b)(1)-(2). Fielding resides in the State of Minnesota.  A substantial part of the wrongs alleged herein were committed within Hennepin County, Minnesota, which is within the District of Minnesota.

PERSONAL JURISDICTION

4.    Defendant Allina is a non-profit domestic corporation doing business

at 2925 Chicago Avenue Mail Route 10905, Minneapolis, MN 55407-1321. Allina does business throughout Minnesota including Hennepin County and has a registered office address of 2925 Chicago Avenue Mail Route 10905, Minneapolis, MN 55407-1321. It does not currently have a registered agent.

THE PARTIES

PLAINTIFF
DESMOND FIELDING

5.      Plaintiff Fielding, is a 65 year-old African American male who was born in Jamaica, West Indies. He is a naturalized U.S. Citizen and a veteran of the U.S. armed forces. Plaintiff worked for Defendant for approximately 13 years before being wrongly terminated from his position with the Hospital.

DEFENDANT

DEFENDANT ALLINA

6.      Defendant Allina Health System, (hereinafter "Allina" or "Defendant") doing business at 2925 Chicago Avenue Mail Route 10905, Minneapolis, MN 55407-1321. Its Chief Executive Officer is Penny Wheeler, MD.

NATURE OF THE CASE

7.      This is an action brought by Plaintiff Desmond Fielding, a United States citizen and resident of the County of Anoka in the State of Minnesota (hereafter "Fielding" or "Plaintiff") against Allina (hereinafter "Defendant").

PROCEDURAL POSTURE

3

8.     Plaintiff, Desmond Fielding, was wrongly terminated from his employment with Defendant, Allina, Inc., on January , 2020.  He timely filed a Charge of Discrimination with the EEOC which was cross filed with the Minnesota Human Rights Department.  Later his race discrimination claim were assigned to the Minneapolis Civil Right Commission.  After six months, in March of 2021, Fielding requested a Right to Sue Notice, which was subsequently provided by both the EEOC and the Minneapolis Civil Rights Commission.

GENERAL ALLEGATIONS

FEDERAL CLAIMS

9.     Plaintiff brings this action for Race Discrimination pursuant to 42 U.S.C. §2000e, et seq., as amended.

10.    Plaintiff brings this federal action for Color Discrimination pursuant to 42 U.S.C. §2000e, et seq., as amended.

11.    Plaintiff brings this federal action for National Origin pursuant to 42 U.S.C. §2000e, et seq., as amended.

STATE CLAIMS

12.    Plaintiff brings a separate claim for Race discrimination in violation of Minn. Stat. §363A.08, et seq., as amended.

13.    Plaintiff brings a separate claim for Color discrimination in violation of Minn. Stat. §363A.08, et seq., as amended.

4

14.     Plaintiff brings a separate claim for National Origin discrimination in violation of Minn. Stat. §363A.08, et seq., as amended.

15.     The Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.08, Subd. 2.  Employer. Except when based on a bona fide occupational qualification, it is an unfair employment practice for an employer, because of race, color, creed, religion, national origin, sex, status with regard to public assistance, familial status, membership or activity in a local commission, disability, sexual orientation, or age to:

(1)     refuse to hire or to maintain a system of employment which unreasonably excludes a person seeking employment; or

(2)     discharge an employee; or

(3)     discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment.

16.     Plaintiff brings a separate action for wrongful interference with economic advantage.

17.     Allina is responsible for its owners, officers and supervisors under *respondeat superior*.

FACTS

18.     Plaintiff Desmond Fielding is a male person that is 65 years of age and

of African American descent, born in Jamaica, West Indies. He speaks with a noticeable Caribbean accent that makes it apparent that he was not born in the United States. He, however speaks excellent English and has had supervisory jobs including as an officer in the U.S. Army and there has not been criticism of his communication skills.

19.    Plaintiff started to work for Allina in 2007 and continued to do so until he was wrongfully terminated by it in 2020.

20.    Mr. Fielding is an African American male born in Jamaica, West Indies and speaks with a Caribbean accent. Plaintiff has worked for Allina for 11 years as a Registered Nurse in a variety of nursing roles. Prior to his wrongful termination he was working in the H5200 unit at Abbott Northwestern. Plaintiff has never received a failing nursing performance review. His prior performance reviews showed him to be in good standing while meeting the department standards.

21.    According to Minnesota Nursing Board records he has never been disciplined or held a suspended nursing license. Fielding is currently registered in the State of Minnesota with a valid unencumbered RN license.

22.    Desmond as an employee of Defendant has been subjected to racial slurs, harassment, discrimination, and retaliation from managers, peers and patients, which was condoned by Human Resources. He has been called names such as "big black dude" and subjected to being treated unfavorably because he is of a certain

6

race (African American) color (Black), and National Origin (Jamaica, West Indies).

Mr. Fielding, has experienced harassment from his nurse manager Ms. Deb Scott,

RN, assistant nurse manager Ms. Kate Haugen, RN, as well as from his colleagues,

which created a hostile and offensive work environment. This resulted in an adverse,

unjust employment decisions by Allina which included, but was not limited to not

investigating his reports of racial discrimination, allowing racial discrimination to

continue and which ultimately culminated in his wrongfully terminated.

23.    The employment relationship between Plaintiff and Defendant Allina

requires a greater obligation by the employer hospital to refrain from inflicting

mental or emotional distress than would apply to a relationship between strangers.

Defendant had a discriminatory bias against Plaintiff.

24.    While working for the Allina Hospital in 2019 and 2020 Desmond

Fielding experienced being the target of race, color, national origin discrimination

by his employer.

25.    His supervisor repeatedly and continually discriminated against him

which was condoned by Defendant's Human Resources.

26.    An Allina supervisor intentionally set about a course to inflict mental

and emotional distress upon Plaintiff out of retaliation for his complaining of

discrimination. The movement by Defendant of reprisal caused damage to his career

as well as causing severe mental and emotional distress which intensified in 2019

7

and 2020.

27.    Defendant knew Plaintiff was a person of African descent who was born in Jamaica, West Indies, who is of the black race and used it as a false device to criticize him and make him miserable in the hope that he would quit.

28.    Allina discriminated, harassed and retaliated against him for resisting and reporting the forgoing discriminatory treatment against him.

29.    Defendant Hospital intentionally and maliciously discriminated and committed acts of reprisal against Plaintiff by doing damaging acts including making him perform acts that would foreseeably harm him, including wrongfully disciplining, abusing, insulting, overly scrutinizing, trying to set up for failure, and engaging in acts calculated to cause Plaintiff pain and suffering, engaging in acts of reprisal against his, threatening, penalizing, and ultimately terminating Plaintiff.

30.    Plaintiff was discriminated against contrary to both Title VII of the Civil Rights Act of 1964, et seq., as amended and the and Minnesota Human Rights law.  At all times relevant herein Fielding was qualified for his job position.  Because of an adverse employment actions which included changes to the terms, conditions or privileges of employment; plaintiff was discharged in violation of both federal and state anti-discrimination laws.  At all times pertinent herein was qualified to do the job for which Plaintiff was wrongfully terminated because of discrimination based on Plaintiff's Race (black), Color (black) and National Origin (Jamaica, west

8

Indies).

31.     The adverse action arose under facts giving rise to an inference of discrimination.

32.     Such facts include the fact that the employee was terminated in violation of federal and state anti-discrimination laws.

33.     Plaintiff was a member of a protected group of persons because of his black race, his black color and his Jamaica, West Indies, national origin and employed by Defendant Allina when the discriminatory treatment occurred by Allina toward him.  He was subjected to an adverse employment action as set forth above.

34.     While working for Allina Plaintiff repeatedly found it failed to give him positions and/or promotions that were given to people who were not of the black race, of black color and with a national origin of Jamaica, West Indies, even though Plaintiff has been a naturalized U.S. citizen and a veteran of the U.S. armed forces.

35.     The foregoing acts of Defendant caused Plaintiff physical pain, harm, and injury in 2019 and 2020.

36.     Defendant Allina from 2019 into 2020 discriminatorily violated its duty by its abusive, discriminatory and insulting conduct in disregard of Plaintiff's interests.  Defendant's discriminatory and harassing behavior was known or should have been known would cause emotional distress and was certain or substantially

9

certain to result because of their discriminatory and retaliatory conduct.

37.     Defendant Allina and its employees intentionally created an abusive, discriminatory, hostile and law-breaking work environment for Plaintiff due to Allina policy and practice of using discriminatory approaches to working with Plaintiff as well as disregarding legal requirements.  This repeated and continuous intentional abuse of Plaintiff became highly outrageous in 2019 and 2020 and included wrongfully disciplining, abusing, insulting, failing to promote, overly scrutinizing, trying to set up for failure, and engaging in acts calculated to cause Plaintiff pain and suffering, engaging in acts of reprisal against him, threatening, penalizing, and ultimately terminating Plaintiff.

38.     During the course of his employment from 2019 and 2020, Plaintiff was subjected to discriminatory remarks and treatment. Allina followed an intentional, severe, pervasive and continuous course of outrageous and unfair discriminatory behavior directed toward severely harming Plaintiff.

39.     The Defendant repeatedly abused the Plaintiff.  It also allowed its employees to intentionally discriminatorily assign Plaintiff tasks to set him up for criticism and failure.  His supervisor's discriminatory false accusations about his performance in 2019 into 2020 caused him to become anxious, have trouble sleeping, feeling depressed, and severe mental and emotional distress in 2019 into 2020 and to present.

40.     Allina subjected Plaintiff to a discriminatory, unwholesome, hostile, and abusive work environment where insults and related harassment were pervasive and the law was violated by Allina.  Plaintiff was made to feel as though he was a misfit, incompetent, senile, and not economically viable.

RACE AND CULTURE IN NURSING

41.     Race is a barrier and source of inequality affecting ethnic minorities in nursing practice and education. Research has shown that racism adds to and significantly exacerbates the risk for health disparities among patients[1] along with a loss of opportunities in the nursing profession.

42.     In 2002, a researcher C.P. Jones[2] demanded that health care professionals explicitly name race and racism in the discussion of the health and well-being of the U.S. population. Adding that initiatives aimed at addressing and eliminating racial health disparities must explore the fundamental causes which are rooted in racism (Jones, 2002).

43.     The nursing sector should be concerned with issues such as racism. Race, in particular, has been shown to cause inequality in nursing practice and education (Beard & Julion, 2016).   As global migration continues, both the population and the nursing workforce in the United States become increasingly diverse. In 2011, the Institute of Medicine called for an increase in the number of

---

[1] Peek, et al., *Racism in Healthcare*, Social Science in Medicine, 2010, 13, 17
[2] Jones, C.P., *Confronting Institutionalized Racism,*

ethnic minority health professionals to better meet the current and future health care needs of the U.S. population (Institute of Medicine, 2011).

44.    The American Association of Colleges of Nursing (2019) asserted that, although nurses should be able to communicate and provide culturally competent care to all patients, providers who share similar characteristics as patients foster better relationships. Despite intensive efforts toward the goal of increasing ethnic minority nurses, engrained structural inequities remain. In fact, several studies have shown that immigrant nurses and nurses of color in the United States continue to experience acts of discrimination and racist comments from colleagues, and patients and their families (Beard & Julion, 2016; Deacon, 2011; Iheduru-Anderson, (2020a, 2020c); Iheduru-Anderson & Wahi, 2018, Moceri, 2014; Primeau et al., 2014). In some cases, immigrant nurses' accents have been used as reasons for discrimination in the workplace (Iheduru-Anderson, 2020b). In addition, studies have shown that nurses, nurse managers and nurse educators are not comfortable or feel ill-equipped to discuss race (Holland, 2015; Nairn et al., 2004, 2012).

45.    Iheduru-Anderson (2020a) reported that White nurses are often silent when they witness racial comments directed at Black nurses, and to avoid conflicts, ***Black nurses often fail to confront racist comments and behaviors.*** This lack of action has been described by DiAngelo (2018) as "White solidarity." Hassouneh and Lutz (2013) called on nurses to challenge racist comments and behaviors, to help

cultivate an inclusive and respectful work climate. Moceri (2014) asked health care organizations to reduce bias in the workplace with conscious discussions of race and racism, while Waite and Nardi (2019) urged nurses not to be deluded into thinking that they are immune from racist and oppressive behaviors because of "our profession, our code of ethics and academic institutions declaration of their resolute beliefs of this ideology." Wros et al. (2009) advocated for nurses to be culturally sensitive not just with patients and families, but also with co-workers.

> There were reports of isolation, loneliness, and inadequate support (Iheduru-Anderson & Wahi, 2018; Robinson, 2014; Wheeler et al., 2013; Xu et al., 2008). Fear and distress from nurses of color's isolation undermined their confidence, often crippling their performance in the workplace. The following excerpt from Xu et al. (2008) demonstrates the experience of abject fear and loss of confidence: "I needed to check the order several times before I really gave the medication. That made me slower than other people... I felt kind of isolated; I felt uncomfortable. I was working in hell" (p. 39).

FEDERAL CLAIMS

FIRST CAUSE OF ACTION

AGAINST ALLINA FOR DISCRIMINATION BASED ON RACE
IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS
ACT OF 1964, 42 U.S.C. § 2000E, *ET SEQ.,* AS AMENDED

46.     The Plaintiff re-alleges the previous paragraphs of this complaint that are incorporated herein by reference and are set forth herein.

47.     Plaintiff was employed by Allina from on or about June 2007 until Allina wrongfully pretextually terminated him on January 16, 2020.

48.     Plaintiff is an African American and seeks redress for discrimination on account of his race in violation of laws the United States in his capacity as an employee of Allina.

49.     This claim is brought in and lies pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* as amended.

50.     All conditions precedent to jurisdiction under Title VII, 42 U.S.C. § 2000e, *et seq*., as amended, have occurred or been complied with to it: a charge of employment discrimination was filed with the equal employment opportunity commission within 180 days of the commission of the unlawful employment practice; notification of right to sue was received from the federal employment opportunity commission on March 4, 2021 and this complaint has been filed within 90 days of receipt of the notification of right to sue.

51.     Plaintiff Desmond Fielding is a African-American who is a naturalized citizen of the United States and the state of Minnesota residing in the City of Coon Rapids, in the County of Anoka and the State of Minnesota.

52.     The unlawful employment practices, harassment discrimination and retaliation alleged herein were committed within the state of Minnesota

53.     Defendant Allina is a corporation and is authorized to do business in and is doing business in the state of Minnesota

54.     Defendant Allina is an employer engaged in an industry that affects

commerce and employs more than 15 employees

55.   Allina is a corporation is a "person" within the meaning of 42 U.S.C. § 2000e et seq., as amended.

56.   While working for Allina Plaintiff experienced race discrimination, harassment and retaliation.

57.   After Plaintiff filed a complaint with the EEOC, subsequently Allina further discriminated and retaliated against him including a discriminatory and retaliatory firing.

58.   The discrimination, harassment and retaliation were so traumatizing that he tried to block out the horrible discriminatory treatment just to be able to cope.

59.   The work environment at Allina where Plaintiff worked in had both supervisors and co-workers who were discriminatory and used the discriminatory and offensive word *Nigger* that is hereinafter referred elsewhere in this complaint as the *"N"* word.  These people include the following:

60.   Deb Scott (Plaintiff's Manager) and Kate Haugen (Plaintiff's Supervisor) have referred to Plaintiff on many occasions as *"you blacks."* On the day of his wrongful termination January 16, 2020, Ms. Haugen throughout the meeting constantly referred to Plaintiff as the "big black dude" which was annotated on his termination papers.

61.   Plaintiff was sent to Human Resources many times with factious claims

of his inadequate job performance (despite his positive work review), treatment of patients, generalized comments which have clearly been taken out of context by coworkers, and exaggerated write ups by management as a means to terminate him. Mr. Fielding has been employed for Abbott Northwestern Hospital for 13 years, 7+ years have been on H5200 under the supervision of Deb Scott RN.

62.    The *"N"* word was used by Brad Bjornson on so many occasions he has lost count and when he did not use the *"N"* word, he resorted to ***"you blacks."*** He viewed and believed his derogatory statements directed to and/or in Plaintiff's presence were funny. His behavior worsened between the years 2019 and 2020. All interactions were reported to Ms. Scott and Ms. Haugen.

63.    Plaintiff was ignored by Ms. Scott and Ms. Haugen every time he reported Brad Bjornson's bigotry and racially discriminatory statements. They would either walk-away when Plaintiff approached them about this or they would respond by saying *"You know Brad, he is only joking."*  Plaintiff was speaking with about 3-4 Nursing Assistants and he believes another Nurse in the hallway when Brad approached us and asked, ***"What are you niggers doing in the hallway, you guys must be with the Bloods or the Crips."***[3] Plaintiff reported the incident to Ms. Scott, but nothing was done. As Brad's bigoted behavior continued, Plaintiff talked to other co-workers about the incident, but they were afraid of retaliation and or

---

[3] These are violent street gangs.

being fired altogether. They stated "If you report anyone white they all come after you, so we are going to keep our mouths shut." Plaintiff has heard Brad constantly reporting black Nursing Assistants to the Manager and on many occasions saying, ***"all these black Nursing Assistants want to do is sit on their asses, play with their phones and internet."***

64.    The management at Allina did not take prompt remedial action to correct discrimination directed at Plaintiff but instead condoned it.

65.    Every time Plaintiff met with Deb Scott (his Nurse Manager) in Human Resources (HR), she (Deb) would constantly accuse Plaintiff of being disingenuous and call his credibility in question while not treating white workers the same way. She expected Plaintiff to be looked down on, insulted and subservient and would not allow him to even make a point.   On multiple occasions she has said to him, *"Desmond you always have to have the last word, you have no empathy, you are too direct and you think you know everything."*   After one such meeting with HR, Plaintiff met with Deb Scott in the hallway outside her office door. He asked Ms. Scott "*why do you constantly take me to HR when many complaints could be handled without getting them involved. You really never allow me an opportunity to clarify any misunderstanding. You always assume that I am in the wrong.*"   Ms. Scott responded, ***"You and many blacks are too direct; you believe you know everything and you have to get the last word and I am tired of it."***   To say that Plaintiff was

17

taken aback and felt hurt by the discriminatory attitude and approach is an understatement.  He reported the incident to the Louise Jacobs (former Director of Telemetry). Nothing was done by Ms. Jacobs. All she told Plaintiff was that Ms. Scott was intimidated by him.

66.    Ms. Scott constantly ridiculed the fact that Plaintiff worked several overtime hours. She was always sarcastically asking, ***"What do you people do with all that overtime money?*** I wish that you would stop working so much because you are affecting my budget."

67.    Another person who acted discriminatorily was Sandy Schum (H5200-Assistant Nurse Manager).  In 2019, Plaintiff was called and offered an afternoon shift (3:00pm-11:30 pm). When he arrived at the Nursing Station Sandy was the day Charge Nurse. She began to berate him by asking, *"Why didn't you answer your phone?"* he responded, *"I was on the Freeway and do not answer my phone while I am driving." She continued to say,* ***"You blacks don't listen and you believe you can get away with everything."*** This was observed by other Nurses at the Nursing Station that were awaiting their assignments. Once they heard the confrontation, they quickly left the Nursing Station. Plaintiff reported the racial and derogatory comments to Deb Scott (H5200-Nurse Manager) and Ms. Scott response was *"Oh! She had a bad day with the new Health Unit Coordinator (HUC)."* Plaintiff responded *"Deb we all have bad days and he did not deserve being belittled and*

*racially degraded*."

68.     Kris Stiefenhofer (H5200-Assistant Nurse Manager) also acted discriminatorily toward Plaintiff. On or about August 23, 2017, Plaintiff was verbally and almost physically assaulted by Kris Stiefenhofer (Charge Nurse). Plaintiff spoke to Ms. Scott about Kris' behavior and her response was, "*Maybe he was having a bad day*."  Plaintiff waited for Ms. Scott to address the issue between Kris and myself but nothing was addressed although there were several witnesses The incident stemmed from Plaintiff asking Kris for assistance with a sheath pull ( a short hollow tube in which a catheter is inserted during cardiac catheterization), he responded with, "Y*ou can do it yourself because I always pull by myself*."  Plaintiff stated "that was not the hospital protocol." He aggressively approached Plaintiff waving his fist by room 5274 on the Unit and stated, "***Didn't I tell you, boy, to pull it by yourself!***" His use of the word *"**boy**"* was discriminatory

69.     On or about August 24, 2017, Plaintiff called Security to report the incident between Kris and him.  Plaintiff met with Sgt S. Feeg in ANW Lobby. Sgt. Feeg informed me, ***"I can file a report but, if I do, it only stays with this office."*** He asked if Plaintiff spoke with his Manager and he explained that he did but nothing was done.  No report was filed and the issue with Kris remained unresolved.

70.     While employed by Defendant, Plaintiff was subjected to numerous discriminatory co-workers.

Discriminatory Co-Workers

71.    In 2019, while working a Friday afternoon shift (11:00-23:30) Plaintiff picked-up one of RN Kim Isenhower's patients from the morning shift (Rm 5274). He believed this patient presented to the hospital for transaortic valve replacement (TAVR) and hypertension. After reviewing the patient's medication administration record (MAR) Plaintiff noticed that Kim had missed and re-scheduled several of the patient's critical cardiac medications. Metoprolol was due at 6:00 pm was re-scheduled to a different time. Because the patient missed his scheduled Metoprolol, he became tachycardiac (heart rate 120-140) and the Rapid response team had to be called. He notified the Charge Nurse of the incident. The next morning (Saturday) he attempted to have a cordial conversation with Kim about why she had re-scheduled such a critical cardiac medication and the adverse impact from her actions. She stated, "I did not reschedule the medication." She left the floor upset and went to the Break Room. Plaintiff was outside rooms 5286, 5288 on the Unit and Kim confronted Plaintiff by stating, ***"You blacks and niggers think you are so smart and know everything."*** The incident was reported to Plaintiff's Manager Deb Scott, but she dismissed his complaint by saying, *"Kim wouldn't do something like that."*

72.    In 2018, during an afternoon shift (3:00 pm-11:30 pm) Plaintiff picked up a patient from Wendy Hagland, RN, who was the day Nurse. After reviewing the patient's chart, he noticed that the patient´s morning potassium was abnormally low

20

and no potassium protocol was ran by Wendy.  He asked her why the potassium protocol wasn't ran because the potassium lab values were posted at approx. 5:30 am that morning and cardiac patients need potassium replacement immediately after the lab values are posted." She referred to him as, **"You blacks seem to think you know everything."** Plaintiff asked her "what she meant by "you blacks" ? The incident was reported to his Manager, Deb Scott but she just ignored Plaintiff and dismissed the incident.

73.    In March of 2019 at the E3100 Nursing Station, Plaintiff floated to E3100 for 4 hours (11:00 am-3:00 pm). When he arrived at the Nursing Station for his patient assignment, the Charge Nurse stated **"you must be that black nurse that is floating here."**

PATIENTS' RACIAL COMMENTS

74.    On election night in 2016 Plaintiff, was assigned two male Caucasian patients (Room 5254 and 5264). When he entered one patient's room (Room 5254) the patient began to inquire about what country he was from and if he was a real Nurse and then stated, "**I Don't want any male Nigger Nurse taking care of me." Plaintiff reported this to the Charge Nurse who stated that she couldn't change his assignment.**

75.    The patient (Rm 5264) was watching the 2016 presidential election. When Plaintiff entered the room, he gave a strange look, this was concerning because

he had just come from room 5254 where that patient had called him *"nigger."* The patient opened with, "*I am sure you "niggers" want Hillary to win, so you guys can get a free ride."* The next day Plaintiff addressed the patients' behaviors and the bigotry Plaintiff endured the night before to his Manager, Ms. Deb Scott. He asked her for a follow-up meeting about the racial incidents, but never received one.

ONGOING DISCRIMINATION AND RETALIATION

76.    The bigotry and racial name calling continued, so Plaintiff felt increasingly uncomfortable about reporting them to his Manager Deb Scott, Kate Haugen, Supervisor and HR because when he did, he was retaliated against by his co-workers who falsified reports to the HR "integrity line." Plaintiff was repeatedly taken to HR (approximately 20-25 times) and told, *"You are lying and not credible."*

77.    After numerous reports by Plaintiff to Allina regarding the ongoing discrimination a phony complaint about him was cooked up in order to justify firing him.  On January 16, 2020, he was falsely accused of abusing a patient because he gave his liquid feeding via gravity method (per documented doctor's order).

78.    This was proven to be false not only by the medical records but a finding that Plaintiff had done nothing unethical by the Nursing Board.

79.    Plaintiff was wrongfully terminated by Kate Haugen (Supervisor) during the meeting with HR. Ms. Haugen referred to him as a *"big black dude."* Throughout the meeting she kept calling him *"the big black dude."* She stated *"I*

*can't believe a "big black dude" would hurt our patients."* Plaintiff eventually

addressed this by stating, *"I didn't know I was a "big black dude".*

80.     In or around December 2019, Mr. Fielding cared for an inpatient with

a history of esophageal cancer. It was known the patient was ambulatory and

independently eating orally and being supplementally fed via a G-tube.

81.     There are generally three ways to feed a patient via a G-tube. 1) bolus

feeding by syringe - this is performed by gravity, by pouring the formula into the

syringe; 2) bolus feeding by syringe- pushing feeding using a plunger to push the

formula into a syringe and 3) feeding formula via a feeding pump which is more

similar to that of an IV pump.

82.     Upon reviewing the order later after the feeding was completed, the

resident MD had incorrectly changed the order to pump feeding, which was not in

accord with hospital policy. Knowing the hospital's policy on G-tube feedings and

the order of the attending physician and corresponding dietician, Mr. Fielding

proceeded with the physician's order, which was the proper procedure.

83.     The Abbott Northwestern Enteral Nutrition Feeding Procedure policy

and procedure guideline reference #MS0088 clearly states under DEFINITIONS:

Bolus infusion (syringe or bag) a larger volume given over several minutes. Bolus

tube feedings should be with a gastrostomy placed tube or commonly known as a

"G-tube." If the patient has a jejunal tube or commonly known as a "J-tube",

feedings should be infused by feeding pump. This policy was recently approved on 8/20/2019 by the Nutrition Committee and 9/4/2019 by the Policy and Procedure Committee.

84.     According to the guidelines for enteral feeding in adult hospital patients by Stroud, Duncan & Nightingale (2003), decisions on route, content, and management of nutritional support are best made by multidisciplinary nutrition teams (Grade A evidence). In this particular case, this is why the attending MD and dietician wrote the original order for the bolus gravity fed order. A resident physician who is still in the learning process would not have likely known the specialized process of parenteral and enteral nutrition, thus changing the order without weighing the evidence-based guidelines. Mr. Fielding followed the employer's appropriate procedure and his employer later falsely accused him of not doing so pretextually as a basis to wrongly penalize him based on discrimination.

REPEATED THEME AT ALLINA THAT BLACK
PEOPLE SHOULD RETURN TO AFRICA

85.     Sometime in 2018-2019 Plaintiff was caring for an alert and oriented male patient in Room 5288, the patient called for assistance to use his urinal and respiratory care. This occurred approximately 11:20 pm during the change of shift, so the incoming Nurse (Maria Fulton), Plaintiff, Nursing Assistant and the Respiratory Therapist entered the patient's room. The Nursing Assistant setup the patient's urinal, while the incoming Nurse and Plaintiff conducted a bedside report

and the Respiratory Therapist setup for the respiratory treatment. The patient missed the urinal, so the Nursing Assistant and Plaintiff had to change his bedding and clothing. While we were doing his care, he stated, ***"I am tired of you colored people taking care of me and you people need to go back to Africa."*** This was witnessed by Maria Fulton, the Nursing Assistant and the Respiratory Therapist. This was electronically documented and reported to Ms. Scott. In his Allina medical record this patient had a documented history of bigotry, rudeness and racial bias against people of color. Plaintiff's Charge Nurse (Kris S) was aware of this patient's established behavior, but Plaintiff was still assigned this patient knowing his racial bias towards people of color. This was done to subject him to racism and in the hope that the patient out discriminatory bias would complain about him; it was a setup.

86.    Plaintiff worked with RN Tim Soboleski (H4000) when he floated to H5200 Nursing Unit. While Soboleski was there Plaintiff heard him constantly making racial and derogatory comments about black co-workers and patients. Plaintiff observed him being condescending to African American Nursing Assistants by calling them ***"hey you, these black Aides are so lazy and all they want to do is sit on their black asses and I wish they all go back to Africa."*** He has also commented ***"that the hospital shouldn't admit these black patients."***[4]

87.    - Plaintiff overheard Shelia (Float Pool Nurse) make comments about

---

[4] Somalian

25

black patients such as *"just another black patient in the room, they are so rude and I dislike having black patients on my assignment list and wish they would go back to their home country."*

88.    In March 2019, Plaintiff floated to Nursing Unit E3100 for (4) hours (11:00 am-3:00 pm). After receiving his assignment, he noticed that one of his patients was a female and Muslim. He asked the Charge Nurse about male Nurses caring for Muslim women. The Charge Nurse response was *"she is not Muslim, just another black Ethiopian patient."*

RACIALLY DISCRIMINATORY ENVIRONMENT AT ALLINA

89.    To Plaintiff's knowledge there were No (0%) African American Managers or Supervisors in any of the 25 Specialty Clinics.  Nor were there any African American nurses in any of the 25 Specialty Clinics.

90.    The breakdown that he was aware of at Allina shows the discrimination in its hiring and promotion practices.

- Nurse Practitioner and Physician Assistants = approx. 30

No (0%) African American Nurse Practitioner and Physician Assistants

- No Mentorship Program for African American nurses
- No Diversity Program or Training
- No Conflict Resolution Program or Committee
- Never attended a Diversity Training or Awareness Class during my 13 years (2007-2020) at ANW.
- Qualified African American nurses that have applied for leadership positions and were rejected.

- Margaret-PB 2000(ICU)-20 years (Med- Surg and ICU experience)
- Sadia-Station H5200 Assistant Nurse Manager (Med- Surg and Telemetry experience.
- Moses D-Station H7200-Assistant Nurse Manager (Med-Surg experience)

91.    All three positions were filled by less experienced Caucasian Nurses. In the case of Moses D., he was the interim third shift Assistant Nurse Manager for approx. (1) year. He applied for the position, but was rejected for a candidate with less experience. He was then required to train that candidate.

92.    Stations E3100 and H5000 have the highest rate of discrimination, retaliation, harassment and lateral violence against African American nurses. Every African American nurse that has floated or worked on those two stations has had false accusations filed against them and all have been taken to HR multiple times.

EXAMPLES OF PREFERENTIAL TREATMENT FOR WHITE PEOPLE ON H5200

93.    If you are an African American attending college and have a conflict with your class schedule and work, it is unlikely that Ms. Scott would intervene and adjust your work schedule. However, other white workers will have their work schedule modified to accommodate. There are several Caucasian staff on H5200 receiving these privileges.

94.    If you are African American seeking to modify your working hours (FTE) you are unlikely to have your request granted.

95.    White smokers are treated differently than black smokers.  There are

several White Smokers on H5200 that have multiple breaks and unaccountable absences from the Unit and Abbott campus throughout their shifts and not being addressed, but this was not the same treatment that was observed by Plaintiff for black workers.

96.     White supervisors are allowed to abuse black workers whereas these same white supervisors act differently and better to white workers.  In September 2017 there was an altercation caused by Kris Stiefenhofer (now second shift Charge Nurse) and myself. This discrimination by him occurred when Plaintiff requested help (sheath pull) from him. Kris was verbally aggressive and almost physically attacked me. Plaintiff reported the incident to Ms. Scott and she respond with "oh, he must have had a bad day."  Ms. Scott response was very disheartening and Plaintiff felt that as his Manager she should have done more to protect him. Kris Stiefenhofer as a Charge Nurse was never disciplined for his actions.  Had the roles been reversed Plaintiff would have been brought to Human Resources, given a reprimand and possibly terminated.

97.     African Americans are least recognized for their care giving efforts on H5200. For example, a month ago Zoe Hoffman (African American), nursing assistant and Plaintiff were caring for a fresh CV patient. Zoe entered the patient's room and found the patient unresponsive. We activated Code Blue and revived the patient who was later transferred to the CV ICU. Plaintiff wrote Zoe a Care Award

for her observation skill which saved the patient's life. Fielding informed Ms. Scott of Zoe's care giving effort and stated "it would mean a lot if the Manager would recognize her for what she did." Zoe never received an acknowledgment from Ms. Scott.

98.    Medication errors are tolerated by white workers but not by black workers.  There are habitual medication errors being made by select nurses, but no "coaching," verbal or writing reprimands are given by Ms. Scott. These nurses keep making the same medication errors which places patients at risk.

99.    Racially discriminatory comments and treatment are acceptable behavior at Allina.  Plaintiff was frequently subjected to derogatory comments on H5200 such as ***"you colored people, you blacks and you black guys must be my nursing assistant."*** Plaintiff has brought these issues to Ms. Scott but no prompt remedial action was taken to correct the situation.

DISCRIMINATORY AND NEGATIVE ASSIGNMENTS AT ALLINA

100.   Plaintiff was routinely assigned patients with extreme behavioral issues by the Assistant Nurse Managers and fill-in Charge Nurses who included: Sandy Schum (1st shift Assistant Nurse Manager), Jean (Former 2nd shift Assistant Nurse Manager), Bruce Bird (Former 3rd shift Assistant Nurse Manager), Kris Stiefenhofer (2nd shift Assistant Nurse Manager). He frequently encountered patient care challenges with these patients and sometimes sought guidance and requested

29

assistance from the Assistant Nurse Managers and fill-in Charge Nurses. These requests were more often than not rebuffed and ignored and no support was given to his patient plan of care actions. Plaintiff observed that his patient assignments usually consisted of mostly African American patients based on stereotyping. The Charge Nurses claim, ***"They're your people so you should better understand them."***

101.   During the course of plaintiff's employment defendant maintained a race discriminatory attitude toward plaintiff. He observed that the defendant had unlawful prejudice and bias for people of the black race.  Based on this unlawful prejudice the Allina discriminatorily treated plaintiff because he was of the black race.  He was treated differently and worse than people of the white race.  The standards expected of him were far different and more difficult to achieve because he was of the black race.  Defendant subjected plaintiff to discriminatory treatment that harmed his ability to work, penalized him, held him back for promotions and subjected him to abuse because he was of the black race.

102.   Despite plaintiff's knowledge and excellent performance, he was not allowed to move upward in his career because of racial prejudice of the defendant. Allina discriminatorily withheld promotions from Plaintiff due to the forgoing prejudice.

103.   Defendant Allina discriminated against plaintiff a black employee with

30

respect to conditions, privileges, advantages and benefits of employment with defendant specifically defendant maintained a separate unlawful prejudicial attitude towards African-Americans and denied plaintiff a black employee the opportunity of obtaining better conditions of employment, the design, intent, purpose and effect being to continue and preserve defendant's long-standing policy, practice, custom and usage of limiting the employment and promotional opportunities of black employees of the defendant because of his race.

104.   While employed by Allina in 2019 and 2020 the Defendant repeatedly and continually applied discriminatory attitude toward plaintiff because of the color of his skin. He observed that the defendant had unlawful prejudice and bias for people who had dark skin similar to his own.  Based on this unlawful prejudice toward the color of his skin the Allina discriminatorily treated plaintiff.  He was treated differently and worse than people who had white skin color.  The standards expected of him were far different and more difficult to achieve because of the color of his skin.  Defendant subjected plaintiff to discriminatory treatment that harmed his ability to work, penalized him, held him back for promotions and subjected him to abuse because of the color of his skin.

105.   During the time period of 2019 and 2020 the Defendant repeatedly and continually applied discriminatory approached directed at plaintiff based on his national origin.  Defendant showed discriminatory hostility because of his having

31

African ancestry. He observed that the defendant had unlawful prejudice and bias for people who were African American. Based on this unlawful prejudice toward African Americans the Allina discriminatorily treated plaintiff. He was treated differently and worse than people who did not have African American ancestry. The standards expected of him as a person with a national origin of being African American were far different and more difficult to achieve than those who had European ancestry. Defendant subjected plaintiff to discriminatory treatment that harmed his ability to work, penalized him, held him back for promotions and subjected him to abuse because of his national origin.

106. Defendant followed a policy and practice of discrimination in employment against Blacks on account of their race. Under such policy and practice defendant Allina through its agents and employees repeatedly harassed, discriminated and retaliated against plaintiff because he attempted to obtain equal opportunity employment for himself and because he filed the aforementioned charges of discrimination with the equal employment opportunity commission

107. During the time plaintiff was employed by defendant Allina said defendant discriminated against plaintiff with respect to the terms, conditions and privileges of employment because of plaintiff's race and color in violation of section Title VII of the Civil Rights Act of 1964, 42 U.S.C. §200e *et seq.*, as amended.

108. The aforementioned discrimination consisted of dissimilar treatment

for Plaintiff from his co-workers who were white.  Based on such race, color and national origin the Defendant Allina made unfounded complaints against the plaintiff.  These mendacious accusations by his white supervisors included false complaints concerning plaintiff's work; his assignment by supervisors to perform inappropriate duties, giving him jobs while withholding needed assistance to perform them, withholding proper assistance and then unfairly criticizing him, doing acts to set him up for failure, giving him a job or task and then changing instructions and/or giving contradictory directions, failing to heed his warnings while later blaming him for things he had warned them could be problems and repeated insults and slurs concerning plaintiff in his presence by supervisors.

109.  By reason of such unlawful discriminatory treatment and false allegations of misconduct plaintiff was terminated by defendant.

110.  The unlawful discrimination against plaintiff continued from late 2019 into 2020.

111.  The forgoing discrimination against Plaintiff was in violation of 42 U.S.C. § 2000e et seq., as amended.

112.  Plaintiff had to work in a hostile work environment at Allina.  The work environment was hostile based on Fielding race, color, and national origin. Discrimination was regular, repeated and continual from 2019 through the date of termination.

113.   Plaintiff an African American person while working for Allina was forced to work in a hostile work environment where his Supervisor subjected employees to discrimination based on race, color, and national origin. Further, the working environment at Allina condoned discrimination, harassment, a lack of respect for black employees and retaliation.

114.   Plaintiff's supervisor subjected Fielding to continual and repeated race, color, and national origin discrimination, harassment and retaliation.   Under his supervision, as an African American person Fielding was required to submit to conduct or communication by him that was abusive and discriminatory.  Submission or rejection of his supervisor's abusive conduct was a factor in decisions affecting Fielding's employment.   His supervisor's conduct and communications had the purpose or effect of substantially interfering with Fielding's employment and creating an intimidating, hostile and offensive employment environment.

115.   Allina knew of Plaintiff's Supervisor discrimination, harassment and retaliation but failed to take timely and appropriate action.  His Supervisor's race, color, and national origin discrimination and harassment was so pervasive that it altered the terms, conditions, and privileges of Fielding's employment and created an abusive working environment.   The supervisor's conduct of discrimination, negative remarks, insults, subjecting him to other abusive acts caused Fielding severe emotional harm.

34

116.  A Human Resource Supervisor was aware of the supervisor's discrimination, harassment and unsafe attitude and condoned it.

117.  Allina had the ability to carefully scrutinize supervisors such as those that supervised Plaintiff but did not do so.  Even though it knew about the discrimination, harassment and retaliation against the Plaintiff, Allina refused to take proper steps to protect its employee Desmond Fielding from it.  To the contrary Allina condoned Supervisor's abusive acts that made Fielding suffer. It used its Human Resources personnel as an instrument for oppression and retaliation against employees.  The Human Resource person that was supposed to be looking into Plaintiff's concerns about the discriminatory treatment toward him instead condoned discrimination against Fielding and took no positive steps to end discrimination directed at Fielding.  Human Resources attitude toward Plaintiff was demeaning, abusive and discriminatory.

118.  Defendant's discrimination against Fielding was perpetrated because Fielding was known by defendant to be of African descent, have a different color skin from his white co-workers, born in a foreign country, and have ancestors of an African origin.  Defendants' discrimination was repeatedly and continually abusive and damaging to Fielding.  The Defendants remarks and acts created a hostile work environment. Fielding suffered adverse employment actions while employed by Allina.

119.   Plaintiff's employer took adverse employment actions against him out of retaliation for resisting and reporting race discrimination and not for a legitimate business reason.  The employer did acts that were pre-textual.  The employer did not supply honest responses to Plaintiff's concerns for their adverse actions but rather gave incomplete or inconsistent explanations further proving to Plaintiff that the employer's acts were unlawful.

120.   The Defendant's foregoing retaliation against Plaintiff included wrongfully disciplining, abusing, insulting, keeping him from being promoted, giving him jobs that it knew were ones the Hospital could create a false accusation about his performance, overly scrutinizing, trying to set up for failure, and engaging in acts calculated to cause Plaintiff pain and suffering, retaliating against, threatening, penalizing, and ultimately terminating Plaintiff. The retaliation affected the Plaintiff's compensation, chances for promotion, terms, conditions, location, privileges of employment and job status.

121.   Allina wrongly retaliated against Plaintiff culminating in the wrongful and pretextual termination of Plaintiff's employment on January 16, 2020.

122.   While employed by Allina Plaintiff was forced to work in  a racially discriminatory work environment where over and over he had to do his job while being subjected to discrimination, harassment and retaliation.  When he tried to reason with his discriminatory tormentors he was further harassed, discriminated and

36

retaliated against.  Finally, after numerous reports of discrimination, harassment and retaliation by Plaintiff to Allina it pre-textually fired me.  As a result he has continued to experience anxiety, stress and other long-lasting negative effects from the terribly discriminatory, harassing and retaliatory treatment he experienced being employed by Allina.

123.   As a direct and proximate result of Defendant's treatment of him, Fielding sustained damages in the form of loss of opportunity for advancement, lost income, lost profits, and reputation through the present date.  Further, Fielding incurred severe mental and emotional damage.

124.   Defendant's foregoing race discrimination, harassment and retaliation was the direct and proximate cause of damage to Plaintiff in excess of $75,000.

SECOND CAUSE OF ACTION

AGAINST ALLINA FOR DISCRIMINATION BASED
ON COLOR IN VIOLATION OF TITLE VII OF
THE CIVIL RIGHTS ACT OF 1964, ET SEQ., AS AMENDED

125.   The Plaintiff re-alleges the previous paragraphs of this complaint that are incorporated herein by reference and are set forth herein.

126.   Plaintiff was employed by Allina from on or about June 2007 until Allina wrongfully pretextually terminated him on January 16, 2020.

127.   Plaintiff is an African American and seeks redress for discrimination on account of his color (black) in violation of laws the United States in his capacity

37

as an employee of Allina.  The color of his skin was substantially darker than that of his supervisor and many of his co-workers.

128.   While working for Allina Plaintiff experienced color discrimination, harassment and retaliation.

129.   After Plaintiff filed a complaint with the EEOC, subsequently Allina further discriminated and retaliated against him including a discriminatory and retaliatory firing.

130.   The discrimination, harassment and retaliation were so traumatizing that he tried to block out the horrible discriminatory treatment just to be able to cope.

131.   The work environment at Allina where Plaintiff worked in had both supervisors and co-workers who were discriminatory and used the discriminatory and offensive word *Nigger.*  The *"N"* word was directed at him by workers with white skin that was different from his dark skin.

132.   Deb Scott (Plaintiff's Manager) and Kate Haugen (Plaintiff's Supervisor) have referred to Plaintiff on many occasions as *"you blacks."* On the day of his wrongful termination January 16, 2020, Ms. Haugen throughout the meeting constantly referred to Plaintiff as the *"big black dude"* which was annotated on his termination papers.

133.   Plaintiff was sent to Human Resources many times with factious claims of his inadequate job performance (despite his positive work review), treatment of

patients, generalized comments which have clearly been taken out of context by coworkers, and exaggerated write ups by management as a means to terminate him. Mr. Fielding has been employed for Abbott Northwestern Hospital for 13 years, 7+ years have been on H5200 under the supervision of Deb Scott RN.

134.   The *"N"* word was used by Brad Bjornson on so many occasions he has lost count and when he did not use the *"N"* word, he resorted to ***"you blacks."*** He viewed and believed his derogatory statements directed to and/or in Plaintiff's presence were funny. His behavior worsened between the years 2019 and 2020. All interactions were reported to Ms. Scott and Ms. Haugen.

135.   Plaintiff was ignored by Ms. Scott and Ms. Haugen every time he reported Brad Bjornson's bigotry and racially discriminatory statements. They would either walk-away when Plaintiff approached them about this or they would respond by saying *"You know Brad, he is only joking."* Plaintiff was speaking with about 3-4 Nursing Assistants and he believes another Nurse in the hallway when Brad approached us and asked, ***"What are you niggers doing in the hallway, you guys must be with the Bloods or the Crips***."[5] Plaintiff reported the incident to Ms. Scott, but nothing was done. As Brad's bigoted behavior continued, Plaintiff talked to other co-workers about the incident, but they were afraid of retaliation and or being fired altogether. They stated *"If you report anyone white they all come after*

---

[5] These are violent street gangs.

*you, so we are going to keep our mouths shut."* Plaintiff has heard Brad constantly reporting black Nursing Assistants to the Manager and on many occasions saying, ***"all these black Nursing Assistants want to do is sit on their asses, play with their phones and internet."***

136.   The management at Allina did not take prompt remedial action to correct discrimination directed at Plaintiff but instead condoned it.

137.   Every time Plaintiff met with Deb Scott (his Nurse Manager) in Human Resources (HR), she (Deb) would constantly accuse Plaintiff of being disingenuous and call his credibility in question while not treating white workers the same way. She expected Plaintiff to be looked down on, insulted and subservient and would not allow him to even make a point.   On multiple occasions she has said to him, ***"Desmond you always have to have the last word, you have no empathy, you are too direct and you think you know everything."*** After one such meeting with HR, Plaintiff met with Deb Scott in the hallway outside her office door. He asked Ms. Scott *"why do you constantly take me to HR when many complains could be handled without getting them involved. You really never allow me an opportunity to clarify any misunderstanding. You always assume that I am in the wrong."*   Ms. Scott responded, ***"You and many blacks are too direct; you believe you know everything and you have to get the last word and I am tired of it."***   To say that Plaintiff was taken aback and felt hurt by the discriminatory attitude and approach is an

40

understatement. He reported the incident to the Louise Jacobs (former Director of Telemetry). Nothing was done by Ms. Jacobs. All she told Plaintiff was that Ms. Scott was intimidated by him.

138.   Ms. Scott constantly ridiculed the fact that Plaintiff worked several overtime hours. She was always sarcastically asking, ***"What do you people do with all that overtime money? I wish that you would stop working so much because you are affecting my budget."***

139.   Another person who acted discriminatorily was Sandy Schum (H5200-Assistant Nurse Manager).  In 2019, Plaintiff was called and offered an afternoon shift (3:00pm-11:30 pm). When he arrived at the Nursing Station Sandy was the day Charge Nurse. She began to berate him by asking, *"Why didn't you answer your phone?"* he responded, "*I was on the Freeway and do not answer my phone while I am driving."* She continued to say*, **"You blacks don't listen and you believe you can get away with everything."*** This was observed by other Nurses at the Nursing Station that were awaiting their assignments. Once they heard the confrontation, they quickly left the Nursing Station. Plaintiff reported the racial and derogatory comments to Deb Scott (H5200-Nurse Manager) and Ms. Scott response was "Oh! *She had a bad day with the new Health Unit Coordinator (HUC)."* Plaintiff responded "Deb we all have bad days and he did not deserve being belittled and racially degraded.

140.   Kris Stiefenhofer (H5200-Assistant Nurse Manager) also acted discriminatorily toward Plaintiff. On or about August 23, 2017, Plaintiff was verbally and almost physically assaulted by Kris Stiefenhofer (Charge Nurse). Plaintiff spoke to Ms. Scott about Kris' behavior and her response was, "*Maybe he was having a bad day*."  Plaintiff waited for Ms. Scott to address the issue between Kris and myself but nothing was addressed although there were several witnesses The incident stemmed from Plaintiff asking Kris for assistance with a sheath pull ( a short hollow tube in which a catheter is inserted during cardiac catheterization), he responded with, "*You can do it yourself because I always pull by myself*."  Plaintiff stated "that was not the hospital protocol." He aggressively approached Plaintiff waving his fist by room 5274 on the Unit and stated, **"Didn't I tell you, boy, to pull it by yourself!"** His use of the word "boy" was discriminatory.

141.   On or about August 24, 2017, Plaintiff called Security to report the incident between Kris and him.  Plaintiff met with Sgt. S. Feeg in *ANW* Lobby. Sgt. Feeg informed me, "*I can file a report but, if I do, it only stays with this office.*"  He asked if Plaintiff spoke with his Manager and he explained that he did but nothing was done.  No report was filed and the issue with Kris remained unresolved.

142.   While employed by Defendant, Plaintiff was subjected to numerous discriminatory co-workers.

Discriminatory Co-Workers

143.   In 2019, while working a Friday afternoon shift (11:00-2330) Plaintiff picked-up one of RN Kim Isenhower's patients from the morning shift (Rm 5274). He believed this patient presented to the hospital for transaortic *valve* replacement (TAVR) and hypertension. After reviewing the patient's medication administration record (MAR) Plaintiff noticed that Kim had missed and re-scheduled several of the patient's critical cardiac medications. Metoprolol was due at 6:00 pm was re-scheduled to a different time. Because the patient missed his scheduled Metoprolol, he became tachycardiac (heart rate 120-140) and the Rapid response team had to be called. He notified the Charge Nurse of the incident. The next morning (Saturday) he attempted to have a cordial conversation with Kim about why she had re-scheduled such a critical cardiac medication and the adverse impact from her actions. She stated, *"I did not reschedule the medication."* She left the floor upset and went to the Break Room. Plaintiff was outside rooms 5286, 5288 on the Unit and Kim confronted Plaintiff by stating, ***"You blacks and niggers think you are so smart and know everything."***  The incident was reported to Plaintiff's Manager Deb Scott, but she dismissed his complaint by saying, *"Kim wouldn't do something like that."*

144.   In 2018, during an afternoon shift (3:00 pm-11:30 pm) Plaintiff picked up a patient from Wendy Hagland, RN, who was the day Nurse. After reviewing the patient's chart, he noticed that the patient´s morning potassium was abnormally low and no potassium protocol was ran by Wendy.  He asked her why the potassium

protocol wasn't ran because the potassium lab values were posted at approx. 5:30 am that morning and cardiac patients need potassium replacement immediately after the lab values are posted.  She referred to him as, *"You blacks seem to think you know everything."* Plaintiff asked her "*what she meant by* ***"you blacks"*** ? The incident was reported to his Manager, Deb Scott but she just ignored Plaintiff and dismissed the incident.

145.   In March of 2019 at the E3100 Nursing Station, Plaintiff floated to E3100 for 4 hours (11:00 am-3:00 pm). When he arrived at the Nursing Station for his patient assignment, the Charge Nurse stated ***"you must be that black nurse that is floating here."***

PATIENTS' COMMENTS TO PLAINTIFF BECAUSE OF HIS DARK SKIN COLOR

146.   On election night in 2016 Plaintiff, was assigned two male Caucasian patients (Room 5254 and 5264). When he entered one patient's room (Room 5254) the patient began to inquire about what country he was from and if he was a real Nurse and then stated, ***"I Don't want any male Nigger Nurse taking care of me."*** Plaintiff reported this to the Charge Nurse who stated that she couldn't change his assignment.

147.   The patient (Rm 5264) was watching the 2016 presidential election. When Plaintiff entered the room, he gave a strange look, this was concerning because he had just come from room 5254 where that patient had called him ***"nigger."*** The

44

patient opened with, ***"I am sure you "niggers" want Hillary to win, so you, guy, can get a free ride."*** The next day Plaintiff addressed the patients' behaviors and the bigotry Plaintiff endured the night before to his Manager, Ms. Deb Scott. He asked her for a follow-up meeting about the racial incidents, but never received one.

ONGOING DISCRIMINATION AND RETALIATION

148.   The bigotry and racial name calling continued, so Plaintiff felt increasingly uncomfortable about reporting them to his Manager Deb Scott, Kate Haugen, Supervisor and HR because when he did, he was retaliated against by his co-workers who falsified reports to the HR *"integrity line."* Plaintiff was repeatedly taken to HR (approximately 20-25 times) and told, *"You are lying and not credible*."

149.   After numerous reports by Plaintiff to Allina regarding the ongoing discrimination a phony complaint about him was cooked up in order to justify firing him.  On January 16, 2020, he was falsely accused of abusing a patient because he gave his liquid feeding via gravity method (per documented doctor's order).

150.   This was proven to be false not only by the medical records but a finding that Plaintiff had done nothing unethical by the Nursing Board.

151.   Plaintiff was wrongfully terminated by Kate Haugen (Supervisor) during the meeting with HR. Ms. Haugen referred to him as a ***"big black dude."*** Throughout the meeting she kept calling him ***"the big black dude."*** She stated ***"I can't believe a "big black dude" would hurt our patients."*** Plaintiff eventually

addressed this by stating, "*I didn't know I was a "big black dude".*

152.   In or around December 2019, Mr. Fielding cared for an inpatient with a history of esophageal cancer. It was known the patient was ambulatory and independently eating orally and being supplementally fed via a G-tube. There are generally three ways to feed a patient via a G-tube.

153.   There are generally three ways to feed a patient via a G-tube. 1) bolus feeding by syringe -this is performed by gravity, by pouring the formula into the syringe; 2) bolus feeding by syringe- pushing feeding using a plunger to push the formula into a syringe and 3) feeding formula via a feeding pump which is more similar to that of an IV pump.

154.   Upon reviewing the order later after the feeding was completed, the resident MD had changed the order to pump feeding, which was not in accord with the hospital's policies. Knowing the hospital's policy on G-tube feedings and the order of the attending physician and corresponding dietician, Mr. Fielding proceeded with the attending physicians' order.

155.   The Abbott Northwestern Enteral Nutrition Feeding Procedure policy and procedure guideline reference #MS0088 clearly states under DEFINITIONS: Bolus infusion (syringe or bag) a larger volume given over several minutes. Bolus tube feedings should be with a gastrostomy placed tube or commonly known as a "G-tube." If the patient has a jejunal tube or commonly known as a "J-tube",

feedings should be infused by feeding pump. This policy was recently approved on 8/20/2019 by the Nutrition Committee and 9/4/2019 by the Policy and Procedure Committee.

156.   According to the guidelines for enteral feeding in adult hospital patients by Stroud, Duncan & Nightingale (2003), decisions on route, content, and management of nutritional support are best made by multidisciplinary nutrition teams (Grade A evidence). In this particular case, this is why the attending MD and dietician wrote the original order for the bolus gravity fed order. A resident physician who is still in the learning process would not have likely known the specialized process of parenteral and enteral nutrition, thus changing the order without weighing the evidence-based guidelines. Mr. Fielding followed the employer's appropriate procedure and his employer falsely accused him of not doing so pretextually as a basis to wrongly penalize him.

### REPEATED THEME AT ALLINA THAT BLACK PEOPLE SHOULD RETURN TO AFRICA

157.   Acts that were discriminatory were directed at him by white people who made clear that his dark skin made him unwanted in the workplace Sometime in 2018-2019 Plaintiff was caring for an alert and oriented male patient in Room 5288, the patient called for assistance to use his urinal and respiratory care. This occurred approximately 11:20 pm during the change of shift, so the incoming Nurse (Maria Fulton), Plaintiff, Nursing Assistant and the Respiratory Therapist entered the

patient's room. The Nursing Assistant setup the patient's urinal, while the incoming Nurse and Plaintiff conducted a bedside report and the Respiratory Therapist setup for the respiratory treatment. The patient missed the urinal, so the Nursing Assistant and Plaintiff had to change his bedding and clothing. While we were doing his care, he stated, ***"I am tired of you colored people taking care of me and you people need to go back to Africa."*** This was witnessed by Maria Fulton, the Nursing Assistant and the Respiratory Therapist. This was electronically documented and reported to Ms. Scott. In his Allina medical record this patient had a documented history of bigotry, rudeness and racial bias against people of color. Plaintiff's Charge Nurse (Kris S) was aware of this patient's established behavior, but Plaintiff was still assigned this patient knowing his racial bias towards people of color.

158.   Plaintiff worked with RN Tim Soboleski (H4000) when he floated to H5200 Nursing Unit. While Soboleski was there Plaintiff heard him constantly making racial and derogatory comments about black co-workers and patients. Plaintiff observed him being condescending to African American Nursing Assistants by calling them ***"hey you, these black Aides are so lazy and all they want to do is sit on their black asses and I wish they all go* back *to Africa."*** He has also commented ***"that the hospital shouldn't admit these black patients***."[6]

159.   Plaintiff overheard Shelia (Float Pool Nurse) make comments about

---

[6] Somalian

black patients such as *"just another black patient in the room, they are so rude and I dislike having black patients on my assignment list and wish they would go back to their home country."*

160.   In March 2019, Plaintiff floated to Nursing Unit E3100 for (4) hours (11:00 am-3:00 pm). After receiving his assignment, he noticed that one of his patients was a female and Muslim. He asked the Charge Nurse about male Nurses caring for Muslim women. The Charge Nurse response was *"she is not Muslim, just another black Ethiopian patient."*

EXAMPLES OF PREFERENTIAL TREATMENT OF WHITE PEOPLE ON H5200

161.   If you have dark skin like Plaintiff and are attending college and have a conflict with your class schedule and work, it is unlikely that Ms. Scott would intervene and adjust your work schedule. However, other white workers will have their work schedule modified to accommodate. There are several Caucasian staff on H5200 receiving these privileges.

162.   If you are dark skinned like Plaintiff and seeking to modify your working hours (FTE) you are unlikely to have your request granted.

163.   White smokers are treated differently than black smokers.  There are several white smokers on H5200 that have multiple breaks and unaccountable absences from the Unit and Abbott campus throughout their shifts and not being addressed, but this was not the same treatment that was observed by Plaintiff for

black workers.

164.   White supervisors are allowed to abuse black workers whereas these same white supervisors act differently and better to white workers.  In September 2017 there was an altercation caused by Kris Stiefenhofer (now second shift Charge Nurse) and myself. This discrimination by him occurred when Plaintiff requested help (sheath pull) from him. Kris was verbally aggressive and almost physically attacked him. Plaintiff reported the incident to Ms. Scott and she respond with *"oh, he must have had a bad day."*  Ms. Scott response was very disheartening and Plaintiff felt that as his Manager she should have done more to protect him. Kris Stiefenhofer as a Charge Nurse was never disciplined for his actions.  Had the roles been reversed Plaintiff would have been brought to Human Resources, given a reprimand and possibly terminated.

165.   People of color are least recognized for their care giving efforts on H5200. For example, Zoe Hoffman (African American), nursing assistant and Plaintiff were caring for a fresh CV patient. Zoe entered the patient's room and found the patient unresponsive. Plaintiff participated in activating a Code Blue and revived the patient who was later transferred to the CV ICU. Plaintiff wrote Zoe a Care Award for her observation skill which saved the patient's life.  Fielding informed Ms. Scott of Zoe's care giving effort and stated *"it would mean a lot if the Manager would recognize her for what she did."* Zoe never received an acknowledgment from

Ms. Scott.

166.   Medication errors are tolerated by white workers but not by people of color workers.   There are habitual medication errors being made by select nurses, but no "coaching," verbal or writing reprimands are given by Ms. Scott. These nurses keep making the same medication errors which places patients at risk.

167.   Discriminatory comments and treatment directed at people of color are acceptable behavior at Allina.  Plaintiff was frequently subjected to derogatory comments on H5200 such as ***"you colored people, you blacks and you must be my nursing assistant."*** Plaintiff has brought these issues to Ms. Scott but no prompt remedial action was taken to correct the situation.

DISCRIMINATORY AND NEGATIVE ASSIGNMENTS AT ALLINA

168.   Plaintiff was routinely assigned patients with extreme behavioral issues by the Assistant Nurse Managers and fill-in Charge Nurses who included: Sandy Schum (1st shift Assistant Nurse Manager), Jean (Former 2nd shift Assistant Nurse Manager), Bruce Bird (Former 3rd shift Assistant Nurse Manager), Kris Stiefenhofer (2nd shift Assistant Nurse Manager). He frequently encountered patient care challenges with these patients and sometimes sought guidance and requested assistance from the Assistant Nurse Managers and fill-in Charge Nurses. These requests were more often than not rebuffed and ignored and no support was given to his patient plan of care actions. Plaintiff observed that his patient assignments

usually consisted of mostly African American patients who were people of color based on stereotyping. The Charge Nurses claim, ***"They're your people so you should better understand them."***

169.   During the course of plaintiff's employment defendant maintained a discriminatory attitude toward plaintiff because of his dark skin color. He observed that the defendant had unlawful prejudice and bias against people of color.  Based on this unlawful prejudice the Allina discriminatorily treated plaintiff because he was of the black race.  He was treated differently and worse than people of the white race.  The standards expected of him were far different and more difficult to achieve because he was of the black race.  Defendant subjected plaintiff to discriminatory treatment that harmed his ability to work, penalized him, held him back for promotions and subjected him to abuse because he was of the black race.

170.   Despite plaintiff's knowledge and excellent performance, he was not allowed to move upward in his career because of racial prejudice of the defendant. Allina discriminatorily withheld promotions from Plaintiff due to the forgoing prejudice.

171.   Defendant Allina discriminated against plaintiff a black employee with respect to conditions, privileges, advantages and benefits of employment with defendant specifically defendant maintained a separate unlawful prejudicial attitude towards African-Americans and denied plaintiff a black employee the opportunity

of obtaining better conditions of employment, the design, intent, purpose and effect being to continue and preserve defendant's long-standing policy, practice, custom and usage of limiting the employment and promotional opportunities of black employees of the defendant because of his race.

172.   While employed by Allina in 2019 and 2020 the Defendant repeatedly and continually applied discriminatory attitude toward plaintiff because of the color of his skin. He observed that the defendant had unlawful prejudice and bias for people who had dark skin similar to his own.  Based on this unlawful prejudice toward the color of his skin the Allina discriminatorily treated plaintiff.  He was treated differently and worse than people who had white skin color.  The standards expected of him were far different and more difficult to achieve because of the color of his skin.  Defendant subjected plaintiff to discriminatory treatment that harmed his ability to work, penalized him, held him back for promotions and subjected him to abuse because of the color of his skin.

173.   During the time period of 2019 and 2020 the Defendant repeatedly and continually applied discriminatory approached directed at plaintiff based on the color of his skin.  Defendant showed discriminatory hostility because of his having dark skin.  He observed that the defendant had unlawful prejudice and bias against people of color.  Based on this unlawful prejudice toward people of color Allina discriminatorily treated plaintiff.  He was treated differently and worse than people

with white skin. The standards expected of him as a person of color were far different and more difficult to achieve than those who had white skin. Defendant subjected plaintiff to discriminatory treatment that harmed his ability to work, penalized him, held him back for promotions and subjected him to abuse because of the color of his skin.

174. Defendant followed a policy and practice of discrimination in employment against blacks on account of their skin color. Under such policy and practice defendant Allina through its agents and employees repeatedly harassed, discriminated and retaliated against plaintiff because he attempted to obtain equal opportunity employment for himself and because he filed the aforementioned charges of discrimination with the equal employment opportunity commission

175. During the time plaintiff was employed by defendant Allina said defendant discriminated against plaintiff with respect to the terms, conditions and privileges of employment because of Plaintiff's color in violation of section Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, as amended.

176. The aforementioned discrimination consisted of dissimilar treatment for Plaintiff from his co-workers who were white. Based Plaintiff's dark skin color the Defendant Allina made unfounded complaints against the plaintiff. These mendacious accusations by his white supervisors included false complaints concerning plaintiff's work; his assignment by supervisors to perform inappropriate

duties, giving him jobs while withholding needed assistance to perform them, withholding proper assistance and then unfairly criticizing him, doing acts to set him up for failure, giving him a job or task and then changing instructions and/or giving contradictory directions, failing to heed his warnings while later blaming him for things he had warned them could be problems and repeated insults and slurs concerning plaintiff in his presence by supervisors; and assigning him patients that were known to have strong biases against people of color with skin as dark as Plaintiff's.

177.  By reason of such unlawful discriminatory treatment and false allegations of misconduct plaintiff was terminated by defendant.

178.  The unlawful discrimination against plaintiff continued from late 2019 into 2020.

179.  The foregoing discrimination against Plaintiff was in violation of 42 U.S.C. § 2000e *et seq*., as amended.

180.  Plaintiff had to work in a hostile work environment at Allina.  The work environment was hostile based on Fielding race, color, and national origin. Discrimination was regular, repeated and continual from 2019 through the date of termination.

181.  Plaintiff a dark skinned person of color while working for Allina was forced to work in a hostile work environment where his Supervisor subjected

employees to discrimination based on the dark color of their skin. Further, the working environment at Allina condoned discrimination, harassment, a lack of respect for black employees and retaliation.

182.  Plaintiff's supervisor subjected Fielding to continual and repeated discrimination, harassment and retaliation based on the dark color of his skin.  Under his supervision, as dark skinned person of color Fielding was required to submit to conduct or communication by him that was abusive and discriminatory.  Submission or rejection of his supervisor's abusive conduct was a factor in decisions affecting Fielding's employment.  His supervisor's conduct and communications had the purpose or effect of substantially interfering with Fielding's employment and creating an intimidating, hostile and offensive employment environment.

183.  Allina knew of Plaintiff's Supervisor discrimination, harassment and retaliation but failed to take timely and appropriate action.  His Supervisor's race, color, and national origin discrimination and harassment was so pervasive that it altered the terms, conditions, and privileges of Fielding's employment and created an abusive working environment.  The supervisor's conduct of discrimination, negative remarks, insults, subjecting him to other abusive acts caused Fielding severe emotional harm.

184.  A Human Resource Supervisor was aware of the supervisor's discrimination, harassment and unsafe attitude and condoned it.

185.   Allina had the ability to carefully scrutinize supervisors such as those that supervised Plaintiff but did not do so.   Even though it knew about the discrimination, harassment and retaliation against the Plaintiff, Allina refused to take proper steps to protect its employee Desmond Fielding from it.   To the contrary Allina condoned Supervisor's abusive acts that made Fielding suffer. It used its Human Resources personnel as an instrument for oppression and retaliation against employees.   The Human Resource person that was supposed to be looking into Plaintiff's concerns about the discriminatory treatment toward him instead condoned discrimination against Fielding and took no positive steps to end discrimination directed at Fielding.   Human Resources attitude toward Plaintiff was demeaning, abusive and discriminatory.

186.   Defendant's discrimination against Fielding was perpetrated because Fielding was known by defendant to be a dark skinned person of color, a different color and darker skin than that of his white co-workers. Defendants' discrimination was repeatedly and continually abusive and damaging to Fielding.   The Defendants remarks and acts created a hostile work environment. Fielding suffered adverse employment actions while employed by Allina.

187.   Plaintiff's employer took adverse employment actions against him out of retaliation for resisting and reporting race discrimination and not for a legitimate business reason.   The employer did acts that were pre-textual.   The employer did not

57

supply honest responses to Plaintiff's concerns for their adverse actions but rather gave incomplete or inconsistent explanations further proving to Plaintiff that the employer's acts were unlawful.

188.   The Defendant's foregoing retaliation against Plaintiff included wrongfully disciplining, abusing, insulting, keeping him from being promoted, giving him jobs that it knew were ones the Hospital could create a false accusation about his performance, overly scrutinizing, trying to set up for failure, and engaging in acts calculated to cause Plaintiff pain and suffering, retaliating against, threatening, penalizing, and ultimately terminating Plaintiff. The retaliation affected the Plaintiff's compensation, chances for promotion, terms, conditions, location, privileges of employment and job status.

189.   Allina wrongly retaliated against Plaintiff culminating in the wrongful and pretextual termination of Plaintiff's employment on January 16, 2020.

190.   While employed by Allina Plaintiff was forced to work in  a racially discriminatory work environment where over and over he had to do his job while being subjected to discrimination, harassment and retaliation.  When he tried to reason with his discriminatory tormentors he was further harassed, discriminated and retaliated against.  Finally, after numerous reports of discrimination, harassment and retaliation by Plaintiff to Allina it pre-textually fired him.  As a result he has continued to experience anxiety, stress and other long-lasting negative effects from

the terribly discriminatory, harassing and retaliatory treatment he experienced being employed by Allina.

191.   As a direct and proximate result of Defendant's treatment of him, Fielding sustained damages in the form of loss of opportunity for advancement, lost income, lost profits, and reputation through the present date.   Further, Fielding incurred severe mental and emotional damage.

192.   Defendant's foregoing discrimination, harassment and retaliation based on color, was the direct and proximate cause of damage to Plaintiff in excess of $75,000.

### THIRD CAUSE OF ACTION

#### AGAINST ALLINA FOR DISCRIMINATION BASED ON NATIONAL ORIGIN IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, ET SEQ., AS AMENDED

193.   The Plaintiff re-alleges the previous paragraphs of this complaint that are incorporated herein by reference and are set forth herein.

194.   Plaintiff seeks redress for discrimination on account of his National Origin, specifically, Jamaica, West Indies, in violation of laws the United States in his capacity as an employee of Allina.   He speaks with a noticeable accent signaling that he was not born in the United States.

195.   While working for Allina Plaintiff experienced discrimination, harassment and retaliation based on his national origin.

196.   After Plaintiff filed a complaint with the EEOC, subsequently Allina further discriminated and retaliated against him including a discriminatory and retaliatory firing.

197.   The discrimination, harassment and retaliation were so traumatizing that he tried to block out the horrible discriminatory treatment just to be able to cope.

198.   The work environment at Allina where Plaintiff worked in had both supervisors and co-workers who were discriminatory and used the discriminatory and offensive word *Nigger* that is hereinafter referred elsewhere in this complaint as the *"N"* word.  Plaintiff was singled out for this treatment because his Caribbean accent made it clear that he was not born in the United States.

199.  Deb Scott (Plaintiff's Manager) and Kate Haugen (Plaintiff's Supervisor) have referred to Plaintiff on many occasions as *"you blacks."* On the day of his wrongful termination January 16, 2020, Ms. Haugen throughout the meeting constantly referred to Plaintiff as the *"big black dude"* which was annotated on his termination papers.

200.   Plaintiff was sent to Human Resources many times with factious claims of his inadequate job performance (despite his positive work review), treatment of patients, generalized comments which have clearly been taken out of context by coworkers, and exaggerated write ups by management as a means to terminate him. Mr. Fielding has been employed for Abbott Northwestern Hospital for 13 years, 7+

years have been on H5200 under the supervision of Deb Scott RN.

201.   The *"N"* word was used by Brad Bjornson on so many occasions he has lost count and when he did not use the *"N"* word, he resorted to *"you blacks."* He viewed and believed his derogatory statements directed to and/or in Plaintiff's presence were funny. His behavior worsened between the years 2019 and 2020. All interactions were reported to Ms. Scott and Ms. Haugen.

202.   Plaintiff was ignored by Ms. Scott and Ms. Haugen every time he reported Brad Bjornson's bigotry and racially discriminatory statements. They would either walk-away when Plaintiff approached them about this or they would respond by saying *"You know Brad, he is only joking."*  Plaintiff was speaking with about 3-4 Nursing Assistants and he believes another Nurse in the hallway when Brad approached us and asked, ***"What are you niggers doing in the hallway, you guys must be with the Bloods or the Crips***."[7] Plaintiff reported the incident to Ms. Scott, but nothing was done. As Brad's bigoted behavior continued, Plaintiff talked to other co-workers about the incident, but they were afraid of retaliation and or being fired altogether. They stated "If you report anyone white they all come after you, so we are going to keep our mouths shut." Plaintiff has heard Brad constantly reporting black Nursing Assistants to the Manager and on many occasions saying, ***"all these black Nursing Assistants want to do is sit on their asses, play with their***

---

[7] These are violent street gangs.

*phones and internet."*

203.   The management at Allina did not take prompt remedial action to correct discrimination directed at Plaintiff but instead condoned it.

204.   Every time Plaintiff met with Deb Scott (his Nurse Manager) in Human Resources (HR), she (Deb) would constantly accuse Plaintiff of being disingenuous and call his credibility in question while not treating white workers the same way. She expected Plaintiff to be looked down on, insulted and subservient and would not allow him to even make a point.   On multiple occasions she has said to him, "Desmond you always have to have the last word, you have no empathy, you are too direct and you think you know everything."   After one such meeting with HR, Plaintiff met with Deb Scott in the hallway outside her office door. He asked Ms. Scott "why do you constantly take me to HR when many complains could be handled without getting them involved. You really never allow me an opportunity to clarify any misunderstanding. You always assume that I am in the wrong."   Ms. Scott responded, ***"You and many blacks are too direct; you believe you know everything and you have to get the last word and I am tired of it."***   To say that Plaintiff was taken aback and felt hurt by the discriminatory attitude and approach is an understatement.   He reported the incident to the Louise Jacobs (former Director of Telemetry). Nothing was done by Ms. Jacobs. All she told Plaintiff was that Ms. Scott was intimidated by him.

205.   Ms. Scott constantly ridiculed the fact that Plaintiff worked several overtime hours. She was always sarcastically asking, ***"What do you people do with all that overtime money? I wish that you would stop working so much because you are affecting my budget."***

206.   Another person who acted discriminatorily was Sandy Schum (H5200-Assistant Nurse Manager).  In 2019, Plaintiff was called and offered an afternoon shift (3:00pm-11:30 pm). When he arrived at the Nursing Station Sandy was the day Charge Nurse. She began to berate him by asking, *"Why didn't you answer your phone?"* he responded, *"I was on the Freeway and do not answer my phone while I am driving."* She continued to say, ***"You blacks don't listen and you believe you can get away with everything."*** This was observed by other Nurses at the Nursing Station that were awaiting their assignments. Once they heard the confrontation, they quickly left the Nursing Station. Plaintiff reported the racial and derogatory comments to Deb Scott (H5200-Nurse Manager) and Ms. Scott response was "Oh! She had a bad day with the new Health Unit Coordinator (HUC)." Plaintiff responded "Deb we all have bad days and he did not deserve being belittled and racially degraded.

207. Kris Stiefenhofer (H5200-Assistant Nurse Manager) also acted discriminatorily toward Plaintiff. On or about August 23, 2017, Plaintiff was verbally and almost physically assaulted by Kris Stiefenhofer (Charge Nurse).

63

Plaintiff spoke to Ms. Scott about Kris' behavior and her response was, *"Maybe he was having a bad day."* Plaintiff waited for Ms. Scott to address the issue between Kris and myself but nothing was addressed although there were several witnesses The incident stemmed from Plaintiff asking Kris for assistance with a sheath pull ( a short hollow tube in which a catheter is inserted during cardiac catheterization), he responded with, "Y*ou can do it yourself because I always pull by myself*." Plaintiff stated "that was not the hospital protocol." He aggressively approached Plaintiff waving his fist by room 5274 on the Unit and stated, ***"Didn't I tell you, boy, to pull it by yourself!"*** His use of the word "boy" was discriminatory.

208.   On or about August 24, 2017, Plaintiff called Security to report the incident between Kris and him. Plaintiff met with Sgt S. Feeg in *ANW* Lobby. Sgt. Feeg informed me, "*I can file a report but, if I do, it only stays with this office."* He asked if Plaintiff spoke with his Manager and he explained that he did but nothing was done. No report was filed and the issue with Kris remained unresolved.

209.   While employed by Defendant, Plaintiff was subjected to numerous discriminatory co-workers.

Discriminatory Co-Workers

210.   In 2019, while working a Friday afternoon shift (11:00-2330) Plaintiff picked-up one of RN Kim Isenhower's patients from the morning shift (Rm 5274). He believed this patient presented to the hospital for transaortic *valve* replacement

64

(TAVR) and hypertension. After reviewing the patient's medication administration record (MAR) Plaintiff noticed that Kim had missed and re-scheduled several of the patient's critical cardiac medications. Metoprolol was due at 6:00 pm was re-scheduled to a different time. Because the patient missed his scheduled Metoprolol, he became tachycardiac (heart rate 120-140) and the Rapid response team had to be called. He notified the Charge Nurse of the incident. The next morning (Saturday) he attempted to have a cordial conversation with Kim about why she had re-scheduled such a critical cardiac medication and the adverse impact from her actions. She stated, "I did not reschedule the medication." She left the floor upset and went to the Break Room. Plaintiff was outside rooms 5286, 5288 on the Unit and Kim confronted Plaintiff by stating, ***"You blacks and niggers think you are so smart and know everything."*** The incident was reported to Plaintiff's Manager Deb Scott, but she dismissed his complaint by saying, "Kim wouldn't do something like that."

211.  In 2018, during an afternoon shift (3:00 pm-11:30 pm) Plaintiff picked up a patient from Wendy Hagland, RN, who was the day Nurse. After reviewing the patient's chart, he noticed that the patient´s morning potassium was abnormally low and no potassium protocol was ran by Wendy.  He asked her why the potassium protocol wasn't ran because the potassium lab values were posted at approx. 5:30 am that morning and cardiac patients need potassium replacement immediately after the lab values are posted." She referred to him as, ***"You blacks seem to think you***

*know everything."* Plaintiff asked her *"what she meant by "you blacks"*? The incident was reported to his Manager, Deb Scott but she just ignored Plaintiff and dismissed the incident.

212.   In March of 2019 at the E3100 Nursing Station, Plaintiff floated to E3100 for 4 hours (11:00 am-3:00 pm). When he arrived at the Nursing Station for his patient assignment, the Charge Nurse stated *"you must be that black nurse that is floating here."*

PATIENTS' RACIAL COMMENTS

213.   On election night in 2016 Plaintiff, was assigned two male Caucasian patients (Room 5254 and 5264). When he entered one patient's room (Room 5254) the patient began to inquire about what country he was from and if he was a real Nurse and then stated, "*I don't want any male Nigger Nurse taking care of me."* Plaintiff reported this to the Charge Nurse who stated that she couldn't change his assignment.

214.   The patient (Rm 5264) was watching the 2016 presidential election. When Plaintiff entered the room, he gave a strange look, this was concerning because he had just come from room 5254 where that patient had called him *"nigger."* The patient opened with, *"I am sure you "niggers" want Hillary to win, so you, guy, can get a free ride."* The next day Plaintiff addressed the patients' behaviors and the bigotry Plaintiff endured the night before to his Manager, Ms. Deb Scott. He asked

66

her for a follow-up meeting about the racial incidents, but never received one.

ONGOING DISCRIMINATION AND RETALIATION

215.   The bigotry and racial name calling continued, so Plaintiff felt increasingly uncomfortable about reporting them to his Manager Deb Scott, Kate Haugen, Supervisor and HR because when he did, he was retaliated against by his co-workers who falsified reports to the HR *"integrity line."* Plaintiff was repeatedly taken to HR (approximately 20-25 times) and told, *"You are lying and not credible*."

216.   After numerous reports by Plaintiff to Allina regarding the ongoing discrimination a phony complaint about him was cooked up in order to justify firing him.  On January 16, 2020, he was falsely accused of abusing a patient because he gave his liquid feeding via gravity method (per documented doctor's order).

217.   This was proven to be false not only by the medical records but a finding that Plaintiff had done nothing unethical by the Nursing Board.

218.   Plaintiff was wrongfully terminated by Kate Haugen (Supervisor) during the meeting with HR. Ms. Haugen referred to him as a "big black dude." Throughout the meeting she kept calling him "the big black dude." She stated "I can't' believe a "big black dude" would hurt our patients." Plaintiff eventually addressed this by stating, "I didn't know I was a "big black dude".

219.   In or around December 2019, Mr. Fielding cared for an inpatient with a history of esophageal cancer. It was known the patient was ambulatory and

independently eating orally and being supplementally fed via a G-tube. There are generally three ways to feed a patient via a G-tube. The discriminatory hostility against a black person born in a different country was clearly shown by Allina.

220. There are generally three ways to feed a patient via a G-tube. 1) bolus feeding by syringe -this is performed by gravity, by pouring the formula into the syringe; 2) bolus feeding by syringe- pushing feeding using a plunger to push the formula into a syringe and 3) feeding formula via a feeding pump which is more similar to that of an IV pump.

221. Upon reviewing the order later after the feeding was completed, the resident MD had changed the order to pump feeding. Knowing the hospital's policy on G-tube feedings and the order of the attending and corresponding dietician, Mr. Fielding proceeded with the physicians' order.

222. The Abbott Northwestern Enteral Nutrition Feeding Procedure policy and procedure guideline reference #MS0088 clearly states under DEFINITIONS: Bolus infusion (syringe or bag) a larger volume given over several minutes. Bolus tube feedings should be with a gastrostomy placed tube or commonly known as a "G-tube." If the patient has a jejunal tube or commonly known as a "J-tube", feedings should be infused by feeding pump. This policy was recently approved on 8/20/2019 by the Nutrition Committee and 9/4/2019 by the Policy and Procedure Committee.

223.    According to the guidelines for enteral feeding in adult hospital patients by Stroud, Duncan & Nightingale (2003), decisions on route, content, and management of nutritional support are best made by multidisciplinary nutrition teams (Grade A evidence). In this particular case, this is why the attending MD and dietician wrote the original order for the bolus gravity fed order. A resident physician who is still in the learning process would not have likely known the specialized process of parenteral and enteral nutrition, thus changing the order without weighing the evidence-based guidelines. Mr. Fielding followed the employer's appropriate procedure and his employer falsely accused him of not doing so pretextually as a basis to wrongly penalize him.

### REPEATED THEME AT ALLINA THAT BLACK PEOPLE SHOULD RETURN TO AFRICA

224.    Sometime in 2018-2019 Plaintiff was caring for an alert and oriented male patient in Room 5288, the patient called for assistance to use his urinal and respiratory care. This occurred approximately 11:20 pm during the change of shift, so the incoming Nurse (Maria Fulton), Plaintiff, Nursing Assistant and the Respiratory Therapist entered the patient's room. The Nursing Assistant setup the patient's urinal, while the incoming Nurse and Plaintiff conducted a bedside report and the Respiratory Therapist setup for the respiratory treatment. The patient missed the urinal, so the Nursing Assistant and Plaintiff had to change his bedding and clothing. While we were doing his care, he stated, *"I am tired of you colored people*

69

*taking care of me and you people need to go back to Africa."* This was witnessed by Maria Fulton, the Nursing Assistant and the Respiratory Therapist. This was electronically documented and reported to Ms. Scott. In his Allina medical record this patient had a documented history of bigotry, rudeness and racial bias against people of color. Plaintiff's Charge Nurse (Kris S) was aware of this patient's established behavior, but Plaintiff was still assigned this patient knowing his racial bias towards people of color.

225.   Plaintiff worked with RN Tim Soboleski (H4000) when he floated to H5200 Nursing Unit. While Soboleski was there Plaintiff heard him constantly making racial and derogatory comments about black co-workers and patients. Plaintiff observed him being condescending to African American Nursing Assistants by calling them ***"hey you, these black Aides are so lazy and all they want to do is sit on their black asses and I wish they all go* back *to Africa."*** He has also commented ***"that the hospital shouldn't admit these black patients***.

226.   - Plaintiff overheard Shelia (Float Pool Nurse) make comments about black patients such as "*just another black patient in the room, they are so rude and I dislike having black patients on my assignment list and wish they would go back to their home country"*

227.   In March 2019, Plaintiff floated to Nursing Unit E3100 for (4) hours (11:00 am-3:00 pm). After receiving his assignment, he noticed that one of his

patients was a female and Muslim. He asked the Charge Nurse about male Nurses caring for Muslim women. The Charge Nurse response was ***"she is not Muslim, just another black Ethiopian patient."***

RACIALLY DISCRIMINATORY ENVIRONMENT AT ALLINA
EXAMPLES OF PREFERENTIAL TREATMENT ON H5200

228.  If you are a person of color who was not born in the United States attending college and have a conflict with your class schedule and work, it is unlikely that Ms. Scott would intervene and adjust your work schedule. However, other white workers will have their work schedule modified to accommodate. There are several Caucasian staff on H5200 receiving these privileges.

229.  If you are African American seeking to modify your working hours (FTE) you are unlikely to have your request granted.

230.  White smokers are treated differently than black smokers.  There are several White Smokers on H5200 that have multiple breaks and unaccountable absences from the Unit and Abbott campus throughout their shifts and not being addressed, but this was not the same treatment that was observed by Plaintiff for black workers.

231.  White supervisors are allowed to abuse people that are black because of their national origin, whereas these same white supervisors act differently and better to white workers.  In September 2017 there was an altercation caused by Kris Stiefenhofer (now second shift Charge Nurse) and myself. This discrimination by

him occurred when Plaintiff requested help (sheath pull) from him. Kris was verbally aggressive and almost physically attacked me. Plaintiff reported the incident to Ms. Scott and she respond with "oh, he must have had a bad day." Ms. Scott response was very disheartening and Plaintiff felt that as his Manager she should have done more to protect him. Kris Stiefenhofer as a Charge Nurse was never disciplined for his actions. Had the roles been reversed Plaintiff would have been brought to Human Resources, given a reprimand and possibly terminated.

232.   African Americans are least recognized for their care giving efforts on H5200. For example, a month ago Zoe Hoffman (African American), nursing assistant and Plaintiff were caring for a fresh CV patient. Zoe entered the patient's room and found the patient unresponsive. We activated Code Blue and revived the patient who was later transferred to the CV ICU. Plaintiff wrote Zoe a Care Award for her observation skill which saved the patient's life. Fielding informed Ms. Scott of Zoe's care giving effort and stated "it would mean a lot if the Manager would recognize her for what she did." Zoe never received an acknowledgment from Ms. Scott.

233.   Medication errors are tolerated by white workers, but not when thought to be made by black people thought to be of African origin. There are habitual medication errors being made by select nurses, but no "coaching," verbal or writing reprimands are given by Ms. Scott. These nurses keep making the same medication

errors which places patients at risk.

234.   Racially discriminatory comments and treatment based on national origin are acceptable behavior at Allina.   Plaintiff was frequently subjected to derogatory comments on H5200 such as "you colored people, you blacks and you must be my nursing assistant." Plaintiff has brought these issues to Ms. Scott but no prompt remedial action was taken to correct the situation.

DISCRIMINATORY AND NEGATIVE ASSIGNMENTS AT ALLINA

235.   Plaintiff was routinely assigned patients with extreme behavioral issues by the Assistant Nurse Managers and fill-in Charge Nurses who included: Sandy Schum (1st shift Assistant Nurse Manager), Jean (Former 2nd shift Assistant Nurse Manager), Bruce Bird (Former 3rd shift Assistant Nurse Manager), Kris Stiefenhofer (2nd shift Assistant Nurse Manager). He frequently encountered patient care challenges with these patients and sometimes sought guidance and requested assistance from the Assistant Nurse Managers and fill-in Charge Nurses. These requests were more often than not rebuffed and ignored and no support was given to his patient plan of care actions. Plaintiff observed that his patient assignments usually consisted of mostly African American patients based on stereotyping. The Charge Nurses claim, "They're your people so you should better understand them."

236.   During the course of plaintiff's employment defendant maintained a race discriminatory attitude toward plaintiff. He observed that the defendant had

unlawful prejudice and bias for people of the black race. Based on this unlawful prejudice the Allina discriminatorily treated plaintiff because he was of the black race. He was treated differently and worse than people of the white race. The standards expected of him were far different and more difficult to achieve because he was of the black race. Defendant subjected plaintiff to discriminatory treatment that harmed his ability to work, penalized him, held him back for promotions and subjected him to abuse because he was of the black race.

237. Despite plaintiff's knowledge and excellent performance, he was not allowed to move upward in his career because of racial prejudice of the defendant. Allina discriminatorily withheld promotions from Plaintiff due to the forgoing prejudice.

238. Defendant Allina discriminated against plaintiff an employee of African origin born in another country with respect to conditions, privileges, advantages and benefits of employment with defendant specifically defendant maintained a separate unlawful prejudicial attitude towards African-Americans and denied plaintiff a black employee the opportunity of obtaining better conditions of employment, the design, intent, purpose and effect being to continue and preserve defendant's long-standing policy, practice, custom and usage of limiting the employment and promotional opportunities of black employees of the defendant because of his race.

239.   While employed by Allina in 2019 and 2020 the Defendant repeatedly and continually applied discriminatory attitude toward plaintiff because of his national origin. He observed that the defendant had unlawful prejudice and bias against people who, like him, were born in a foreign country.  Based on this unlawful prejudice toward people born in another country. Allina discriminatorily treated plaintiff.  He was treated differently and worse than people who were white.  The standards expected of him were far different and more difficult to achieve because of his national origin.  Defendant subjected plaintiff to discriminatory treatment that harmed his ability to work, penalized him, held him back for promotions and subjected him to abuse because of his national origin.

240.   During the time period of 2019 and 2020 the Defendant repeatedly and continually applied discriminatory approached directed at plaintiff based on his national origin.  Defendant showed discriminatory hostility because of his having African and Jamaica, West Indies ancestry.  He observed that the defendant had unlawful prejudice and bias for people who were African American or black and boron in a foreign country.  Allina discriminatorily treated plaintiff based on its unlawful prejudice toward African Americans and foreign born persons of color.  He was treated differently and worse than people who did not have African American ancestry.  The standards expected of him as a person with a national origin of being African American were far different and more difficult to achieve than those who

had European ancestry.  Defendant subjected plaintiff to discriminatory treatment that harmed his ability to work, penalized him, held him back for promotions and subjected him to abuse because of his national origin.

241.  Defendant followed a policy and practice of discrimination in employment against Blacks on account of their race. Under such policy and practice defendant Allina through its agents and employees repeatedly harassed, discriminated and retaliated against plaintiff because he attempted to obtain equal opportunity employment for himself and because he filed the aforementioned charges of discrimination with the equal employment opportunity commission

242.  During the time plaintiff was employed by defendant Allina said defendant discriminated against plaintiff with respect to the terms, conditions and privileges of employment because of plaintiff's race and color in violation of section Title VII of the Civil Rights Act of 1964, et seq., as amended.

243.  The aforementioned discrimination consisted of dissimilar treatment for Plaintiff from his co-workers who were white.  Based on such race, color and national origin the Defendant Allina made unfounded complaints against the plaintiff.  These mendacious accusations by his white supervisors included false complaints concerning plaintiff's work; his assignment by supervisors to perform inappropriate duties, giving him jobs while withholding needed assistance to perform them, withholding proper assistance and then unfairly criticizing him, doing

acts to set him up for failure, giving him a job or task and then changing instructions and/or giving contradictory directions, failing to heed his warnings while later blaming him for things he had warned them could be problems and repeated insults and slurs concerning plaintiff in his presence by supervisors.

244.   By reason of such unlawful discriminatory treatment and false allegations of misconduct plaintiff was terminated by defendant.

245.   The unlawful discrimination against plaintiff continued from late 2019 into 2020.

246.   The forgoing discrimination against Plaintiff was in violation of 42 U.S.C. § 2000e et seq., as amended.

247.   Plaintiff had to work in a hostile work environment at Allina.  The work environment was hostile based on Fielding's national origin.  Discrimination was regular, repeated and continual from 2019 through the date of termination.

248.   Plaintiff a person of African descent born in Jamaica, West Indies, while working for Allina was forced to work in a hostile work environment where his Supervisor subjected employees to discrimination based national origin. Further, the working environment at Allina condoned discrimination, harassment, a lack of respect for foreign born employees and retaliation.

249.   Plaintiff's supervisor subjected Fielding to continual and repeated discrimination, harassment and retaliation based on his national origin.  Under his

supervision, as an African American person Fielding was required to submit to conduct or communication by him that was abusive and discriminatory. Submission or rejection of his supervisor's abusive conduct was a factor in decisions affecting Fielding's employment. His supervisor's conduct and communications had the purpose or effect of substantially interfering with Fielding's employment and creating an intimidating, hostile and offensive employment environment.

250.   Allina knew of Plaintiff's Supervisor discrimination, harassment and retaliation but failed to take timely and appropriate action. His Supervisor's discrimination, harassment, and retaliation based on Plaintiff's national origin was so pervasive that it altered the terms, conditions, and privileges of Fielding's employment and created an abusive working environment. The supervisor's conduct of discrimination, negative remarks, insults, subjecting him to other abusive acts caused Fielding severe emotional harm.

251. A Human Resource Supervisor was aware of the supervisor's discrimination, harassment and unsafe attitude and condoned it.

252.   Allina had the ability to carefully scrutinize supervisors such as those that supervised Plaintiff but did not do so. Even though it knew about the discrimination, harassment and retaliation against the Plaintiff, Allina refused to take proper steps to protect its employee Desmond Fielding from it. To the contrary Allina condoned Supervisor's abusive acts that made Fielding suffer. It used its

Human Resources personnel as an instrument for oppression and retaliation against employees. The Human Resource person that was supposed to be looking into Plaintiff's concerns about the discriminatory treatment toward him instead condoned discrimination against Fielding and took no positive steps to end discrimination directed at Fielding. Human Resources attitude toward Plaintiff was demeaning, abusive and discriminatory.

253. Defendant's discrimination against Fielding was perpetrated because Fielding was known by defendant to have been born in a foreign country. Defendants' discrimination was repeatedly and continually abusive and damaging to Fielding. The Defendants remarks and acts created a hostile work environment. Fielding suffered adverse employment actions while employed by Allina.

254. Plaintiff's employer took adverse employment actions against him out of retaliation for resisting and reporting race discrimination and not for a legitimate business reason. The employer did acts that were pre-textual. The employer did not supply honest responses to Plaintiff's concerns for their adverse actions but rather gave incomplete or inconsistent explanations further proving to Plaintiff that the employer's acts were unlawful.

255. The Defendant's foregoing retaliation against Plaintiff included wrongfully disciplining, abusing, insulting, keeping him from being promoted, giving him jobs that it knew were ones the Hospital could create a false accusation

about his performance, overly scrutinizing, trying to set up for failure, and engaging in acts calculated to cause Plaintiff pain and suffering, retaliating against, threatening, penalizing, and ultimately terminating Plaintiff. The retaliation affected the Plaintiff's compensation, chances for promotion, terms, conditions, location, privileges of employment and job status.

256.   Allina wrongly retaliated against Plaintiff culminating in the wrongful and pretextual termination of Plaintiff's employment on January 16, 2020.

257.   While employed by Allina Plaintiff was forced to work in a xenophobic racially discriminatory work environment that was hostile to foreign born employees of color where over and over he had to do his job while being subjected to discrimination, harassment and retaliation.   When he tried to reason with his discriminatory tormentors he was further harassed, discriminated and retaliated against.   Finally, after numerous reports of discrimination, harassment and retaliation by Plaintiff to Allina it pre-textually fired me.   As a result he has continued to experience anxiety, stress and other long-lasting negative effects from the terribly discriminatory, harassing and retaliatory treatment he experienced being employed by Allina.

258.   As a direct and proximate result of Defendant's treatment of him, Fielding sustained damages in the form of loss of opportunity for advancement, lost income, lost profits, and reputation through the present date.   Further, Fielding

incurred severe mental and emotional damage.

259.   Defendant's foregoing discrimination, harassment and retaliation based on his national origin was the direct and proximate cause of damage to Plaintiff in excess of $75,000.

MINNESOTA STATE CLAIMS

FOURTH CAUSE OF ACTION

AGAINST DEFENDANT ALLINA FOR DISCRIMINATION
BASED ON RACE IN VIOLATION OF MINN. STAT. §363A.08

260.   The Plaintiff re-alleges the previous paragraphs of this complaint that are incorporated herein by reference and are set forth herein.

261.   Plaintiff was employed by Allina from on or about June 2007 until Allina wrongfully pretextually terminated him on January 16, 2020.

262.   Plaintiff was born in Jamaica, West Indies and seeks redress for discrimination on account of his race (African descent) in violation of Minnesota anti-discrimination law as set forth in Minn. Stat. § 363A.08, et seq., as amended.

263.   Plaintiff Desmond Fielding is a black man who was born in Jamaica, West Indies.   He is a naturalized citizen of the United States and the state of Minnesota residing at in the City of Coon Rapids, in the County of Anoka.

264.   The unlawful employment practices, harassment discrimination and retaliation based on race alleged herein were committed within the state of Minnesota within 365 days of his filing a charge with the EEOC.

265.   During the course of plaintiff's employment defendant maintained a racially discriminatory attitude toward plaintiff. He observed that the defendant had unlawful prejudice and bias against people of the black race.

266.   Despite plaintiff's knowledge and excellent performance, he was not allowed to move upward in his career because of the unlawful racial prejudice of the defendant.  Allina discriminatorily withheld promotions from Plaintiff due to the foregoing prejudice.

267.   Defendant Allina discriminated against plaintiff a black employee with respect to conditions, privileges, advantages and benefits of employment with defendant specifically defendant maintained a separate unlawful prejudicial attitude towards African-Americans and denied plaintiff a black employee the opportunity of obtaining better conditions of employment, the design, intent, purpose and effect being to continue and preserve defendant's long-standing policy, practice, custom and usage of limiting the employment and promotional opportunities of black employees of the defendant because of his race.

268.   The aforementioned discrimination consisted of dissimilar treatment for Plaintiff from his co-workers who were white.  Based on his race  the Defendant Allina made unfounded complaints against the plaintiff.   These mendacious accusations by his white supervisors included false complaints concerning plaintiff's work; his assignment by supervisors to perform inappropriate duties, giving him jobs

while withholding needed assistance to perform them, withholding proper assistance and then unfairly criticizing him, doing acts to set him up for failure, giving him a job or task and then changing instructions and/or giving contradictory directions, failing to heed his warnings while later blaming him for things he had warned them could be problems and repeated insults and slurs concerning plaintiff in his presence by supervisors.

269.   By reason of such unlawful discriminatory treatment and false allegations of misconduct plaintiff was terminated by defendant.

270.   The unlawful discrimination against plaintiff continued from late 2019 into 2020.

271.   The forgoing discrimination against Plaintiff was in violation of Minn. Stat. § 363A.08, et seq., as amended.

272.   Plaintiff's supervisor subjected Fielding to continual and repeated discrimination, harassment and retaliation based on his race.  As black person Fielding was required to submit to conduct or communication by him that was abusive and discriminatory based on his black race. Submission or rejection of his supervisor's abusive conduct was a factor in decisions affecting Fielding's employment.  His supervisor's conduct and communications had the purpose or effect of substantially interfering with Fielding's employment and creating an intimidating, hostile and offensive employment environment.

273.   Allina knew of Plaintiff's Supervisor discrimination, harassment and retaliation but failed to take timely and appropriate action.  His Supervisor's race discrimination, harassment and retaliation was so pervasive that it altered the terms, conditions, and privileges of Fielding's employment and created an abusive working environment.  The supervisor's conduct of discrimination, negative remarks, insults, subjecting him to other abusive acts caused Fielding severe emotional harm.

274. A Human Resource Supervisor was aware of the supervisor's discrimination, harassment and unsafe attitude and condoned it.

275.   Allina had the ability to carefully scrutinize supervisors such as those that supervised Plaintiff but did not do so.  Even though it knew about the discrimination, harassment and retaliation against the Plaintiff, Allina refused to take proper steps to protect its employee Desmond Fielding from it.  To the contrary Allina condoned Supervisor's abusive acts that made Fielding suffer. It used its Human Resources personnel as an instrument for oppression and retaliation against employees.  The Human Resource person that was supposed to be looking into Plaintiff's concerns about the discriminatory treatment toward him instead condoned discrimination against Fielding and took no positive steps to end discrimination directed at Fielding.  Human Resources attitude toward Plaintiff was demeaning, abusive and discriminatory.

276.   Defendant's discrimination against Fielding was perpetrated because

Fielding was of the black race. Defendants' discrimination was repeatedly and continually abusive and damaging to Fielding. The Defendants remarks and acts created a hostile work environment.

277. Desmond Fielding suffered adverse employment actions while employed by Allina.

278. Plaintiff's employer took adverse employment actions against him out of retaliation for resisting and reporting race discrimination and not for a legitimate business reason. The employer did acts that were pre-textual. The employer did not supply honest responses to Plaintiff's concerns for their adverse actions but rather gave incomplete or inconsistent explanations further proving to Plaintiff that the employer's acts were unlawful.

279. The Defendant's foregoing retaliation against Plaintiff included wrongfully disciplining, abusing, insulting, keeping him from being promoted, giving him jobs that it knew were ones that would allow it to create a false accusation about his performance, overly scrutinizing, trying to set up for failure, and engaging in acts calculated to cause Plaintiff pain and suffering, retaliating against, threatening, penalizing, and ultimately terminating Plaintiff. The retaliation affected the Plaintiff's compensation, chances for promotion, terms, conditions, location, privileges of employment and job status.

280. Not only did Allina unjustly terminate Mr. Fielding they reported him

85

to the Minnesota Board of Nursing for the events that occurred while employed at Allina for "nurse practice situations."   The board determined "no actions were warranted" agreeing Mr. Fielding did not act inappropriately as management claimed he did.

281.   Allina wrongly retaliated against Plaintiff culminating in the wrongful and pretextual termination of Plaintiff's employment on January 16, 2020.

282.   As a direct and proximate result of Defendant's treatment of him, Fielding sustained damages in the form of loss of opportunity for advancement, lost income, lost profits, and reputation through the present date.   Further, Fielding incurred severe mental and emotional damage.

283.   Defendant's foregoing discrimination harassment, and retaliation based on Plaintiff's race was the direct and proximate cause of damage to Plaintiff in excess of $75,000.

FIFTH CAUSE OF ACTION

AGAINST DEFENDANT ALLINA FOR DISCRIMINATION
BASED ON COLOR IN VIOLATION OF MINN. STAT. §363A.08

284.   The Plaintiff re-alleges the previous paragraphs of this complaint that are incorporated herein by reference and are set forth herein.

285.   Plaintiff was employed by Allina from on or about June 2007 until Allina wrongfully pretextually terminated him on January 16, 2020.

286.   Plaintiff is a person of color and seeks redress for discrimination on

account of his dark skin color in violation of Minnesota anti-discrimination law as set forth in Minn. Stat. § 363A.08, et seq., as amended.

287.   Plaintiff Desmond Fielding is a person of color who is a citizen of the United States and the state of Minnesota residing at in the City of Coon Rapids, in the County of Anoka.

288.   The unlawful employment practices, harassment discrimination and retaliation alleged herein were committed within the state of Minnesota within 365 days of his filing a charge with the EEOC.

289.   During the course of plaintiff's employment defendant maintained a discriminatory attitude toward plaintiff because he is a person of color. He observed that the defendant had unlawful prejudice and bias against people of color.

290.   Despite plaintiff's knowledge and excellent performance, he was not allowed to move upward in his career because of unlawful racial prejudice of the defendant.  Allina discriminatorily withheld promotions from Plaintiff due to the forgoing prejudice.

291.   Defendant Allina discriminated against plaintiff a black employee with respect to conditions, privileges, advantages and benefits of employment with defendant specifically defendant maintained a separate unlawful prejudicial attitude towards people of color and denied plaintiff, ap person of color, the opportunity of obtaining better conditions of employment, the design, intent, purpose and effect

being to continue and preserve defendant's long-standing policy, practice, custom and usage of limiting the employment and promotional opportunities of Plaintiff because of his dark skin color.

292.   The aforementioned discrimination consisted of dissimilar treatment for Plaintiff from his co-workers who were white.   Based his dark skin color Defendant Allina made unfounded complaints against the plaintiff.   These mendacious accusations by his white supervisors included false complaints concerning plaintiff's work; his assignment by supervisors to perform inappropriate duties, giving him jobs while withholding needed assistance to perform them, withholding proper assistance and then unfairly criticizing him, doing acts to set him up for failure, giving him a job or task and then changing instructions and/or giving contradictory directions, failing to heed his warnings while later blaming him for things he had warned them could be problems and repeated insults and slurs concerning plaintiff in his presence by supervisors.

293.   By reason of such unlawful discriminatory treatment and false allegations of misconduct plaintiff was terminated by defendant.

294.   The unlawful discrimination against plaintiff continued from late 2019 into 2020.

295.   The forgoing discrimination against Plaintiff was in violation of Minn. Stat. § 363A.08, et seq., as amended.

296.   Plaintiff's supervisor subjected Fielding to continual and repeated discrimination, harassment and retaliation based on his dark skin color.  As person of color Fielding was required to submit to conduct or communication by him that was abusive and discriminatory based on his having dark skin.  Submission or rejection of his supervisor's abusive conduct was a factor in decisions affecting Fielding's employment.  His supervisor's conduct and communications had the purpose or effect of substantially interfering with Fielding's employment and creating an intimidating, hostile and offensive employment environment.

297.   Allina knew of Plaintiff's Supervisor discrimination, harassment and retaliation but failed to take timely and appropriate action.  His Supervisor's discrimination, harassment, and retaliation based on his dark skin color was so pervasive that it altered the terms, conditions, and privileges of Fielding's employment and created an abusive working environment.  The supervisor's conduct of discrimination, negative remarks, insults, subjecting him to other abusive acts caused Fielding severe emotional harm.

298.   A Human Resource Supervisor was aware of the supervisor's discrimination, harassment and unsafe attitude and condoned it.

299.   Allina had the ability to carefully scrutinize supervisors such as those that supervised Plaintiff but did not do so.  Even though it knew about the discrimination, harassment and retaliation against the Plaintiff, Allina refused to take

proper steps to protect its employee Desmond Fielding from it.  To the contrary Allina condoned Supervisor's abusive acts that made Fielding suffer. It used its Human Resources personnel as an instrument for oppression and retaliation against employees.  The Human Resource person that was supposed to be looking into Plaintiff's concerns about the discriminatory treatment toward him instead condoned discrimination against Fielding and took no positive steps to end discrimination directed at Fielding.  Human Resources attitude toward Plaintiff was demeaning, abusive and discriminatory.

300.  Defendant's discrimination against Fielding was perpetrated because Fielding was known by defendant to have a dark color of skin from his white co-workers and have ancestors of an African national origin.  Defendants' discrimination was repeatedly and continually abusive and damaging to Fielding. The Defendants remarks and acts created a hostile work environment.

301.  Desmond Fielding suffered adverse employment actions while employed by Allina.

302.  Plaintiff's employer took adverse employment actions against him out of retaliation for resisting and reporting race discrimination and not for a legitimate business reason.  The employer did acts that were pre-textual.  The employer did not supply honest responses to Plaintiff's concerns for their adverse actions but rather gave incomplete or inconsistent explanations further proving to Plaintiff that the

employer's acts were unlawful.

303.   The Defendant's foregoing retaliation against Plaintiff included wrongfully disciplining, abusing, insulting, keeping him from being promoted, giving him jobs that it knew were ones that would allow it to create a false accusation about his performance, overly scrutinizing, trying to set up for failure, and engaging in acts calculated to cause Plaintiff pain and suffering, retaliating against, threatening, penalizing, and ultimately terminating Plaintiff. The retaliation affected the Plaintiff's compensation, chances for promotion, terms, conditions, location, privileges of employment and job status.

304.   Not only did Allina unjustly terminate Mr. Fielding they reported him to the Minnesota Board of Nursing for the events that occurred while employed at Allina for "nurse practice situations."    The board determined "no actions were warranted" agreeing Mr. Fielding did not act inappropriately as management claimed he did.

305.   Allina wrongly retaliated against Plaintiff culminating in the wrongful and pretextual termination of Plaintiff's employment on January 16, 2020.

306.   As a direct and proximate result of Defendant's treatment of him, Fielding sustained damages in the form of loss of opportunity for advancement, lost income, lost profits, and reputation through the present date.  Further, Fielding incurred severe mental and emotional damage.

307.   Defendant's foregoing discrimination, harassment and retaliation based on Plaintiff's color was the direct and proximate cause of damage to Plaintiff in excess of $75,000.

### Sixth Cause of Action

AGAINST DEFENDANT ALLINA FOR DISCRIMINATION
BASED ON RACE IN VIOLATION OF MINN. STAT. §363A.08

308.   The Plaintiff re-alleges the previous paragraphs of this complaint that are incorporated herein by reference and are set forth herein.

309.   Plaintiff was employed by Allina from on or about June 2007 until Allina wrongfully pretextually terminated him on January 16, 2020.

310.   Plaintiff is a naturalized U.S. citizen born in Jamaica, West Indies and seeks redress for discrimination on account of his national origin (Jamaica, West Indies),  n violation of Minnesota anti-discrimination law as set forth in Minn. Stat. § 363A.08, et seq., as amended.

311.   Plaintiff Desmond Fielding is a naturalized U.S. citizen residing at in the City of Coon Rapids, in the County of Anoka, within the state of Minnesota.

312.   The unlawful employment practices, harassment discrimination and retaliation alleged herein were committed within the state of Minnesota within 365 days of his filing a charge with the EEOC.

313.   During the course of plaintiff's employment defendant maintained a discriminatory attitude toward plaintiff because of his national origin. He observed

that the defendant had unlawful prejudice and bias against people of a different national origin.

314.   Despite plaintiff's knowledge and excellent performance, he was not allowed to move upward in his career because of unlawful prejudice based on his national origin by the defendant.  Allina discriminatorily withheld promotions from Plaintiff due to the forgoing prejudice.

315.   Defendant Allina discriminated against plaintiff a black employee with respect to conditions, privileges, advantages and benefits of employment with defendant specifically defendant maintained a separate unlawful prejudicial attitude towards Plaintiff based on his national origin and denied him the opportunity of obtaining better conditions of employment, the design, intent, purpose and effect being to continue and preserve defendant's long-standing policy, practice, custom and usage of limiting the employment and promotional opportunities of black employees of the defendant because his national origin

316.   The aforementioned discrimination consisted of dissimilar treatment for Plaintiff from his co-workers who were white.  Based on such national origin the Defendant Allina made unfounded complaints against the plaintiff.   These mendacious accusations by his white supervisors included false complaints concerning plaintiff's work; his assignment by supervisors to perform inappropriate duties, giving him jobs while withholding needed assistance to perform them,

93

withholding proper assistance and then unfairly criticizing him, doing acts to set him up for failure, giving him a job or task and then changing instructions and/or giving contradictory directions, failing to heed his warnings while later blaming him for things he had warned them could be problems and repeated insults and slurs concerning plaintiff in his presence by supervisors.

317.   By reason of such unlawful discriminatory treatment and false allegations of misconduct plaintiff was terminated by defendant.

318.   The unlawful discrimination against plaintiff continued from late 2019 into 2020.

319.   The forgoing discrimination against Plaintiff was in violation of Minn. Stat. § 363A.08, et seq., as amended.

320.   Plaintiff's supervisor subjected Fielding to continual and repeated discrimination, harassment and retaliation based on his race.  As foreign born person Fielding was required to submit to conduct or communication by him that was abusive and discriminatory based on his national origin.  Submission or rejection of his supervisor's abusive conduct was a factor in decisions affecting Fielding's employment.  His supervisor's conduct and communications had the purpose or effect of substantially interfering with Fielding's employment and creating an intimidating, hostile and offensive employment environment.

321.   Allina knew of Plaintiff's Supervisor discrimination, harassment and

retaliation but failed to take timely and appropriate action.   His Supervisor's discrimination, harassment, and retaliation based on Plaintiff's national origin was so pervasive that it altered the terms, conditions, and privileges of Fielding's employment and created an abusive working environment.   The supervisor's conduct of discrimination, negative remarks, insults, subjecting him to other abusive acts caused Fielding severe emotional harm.

322.   A Human Resource Supervisor was aware of the supervisor's discrimination, harassment and unsafe attitude and condoned it.

323.   Allina had the ability to carefully scrutinize supervisors such as those that supervised Plaintiff but did not do so.   Even though it knew about the discrimination, harassment and retaliation against the Plaintiff, Allina refused to take proper steps to protect its employee Desmond Fielding from it.   To the contrary Allina condoned Supervisor's abusive acts that made Fielding suffer. It used its Human Resources personnel as an instrument for oppression and retaliation against employees.   The Human Resource person that was supposed to be looking into Plaintiff's concerns about the discriminatory treatment toward him instead condoned discrimination against Fielding and took no positive steps to end discrimination directed at Fielding.   Human Resources attitude toward Plaintiff was demeaning, abusive and discriminatory.

324.   Defendant's discrimination against Fielding was perpetrated because

Fielding was known by defendant to have been born outside of the United States. Defendants' discrimination was repeatedly and continually abusive and damaging to Fielding. The Defendants remarks and acts created a hostile work environment.

325. Desmond Fielding suffered adverse employment actions while employed by Allina.

326. Plaintiff's employer took adverse employment actions against him out of retaliation for resisting and reporting discrimination, harassment and retaliation based on his national origin and not for a legitimate business reason. The employer did acts that were pre-textual. The employer did not supply honest responses to Plaintiff's concerns for their adverse actions but rather gave incomplete or inconsistent explanations further proving to Plaintiff that the employer's acts were unlawful.

327. The Defendant's foregoing retaliation against Plaintiff included wrongfully disciplining, abusing, insulting, keeping him from being promoted, giving him jobs that it knew were ones that would allow it to create a false accusation about his performance, overly scrutinizing, trying to set up for failure, and engaging in acts calculated to cause Plaintiff pain and suffering, retaliating against, threatening, penalizing, and ultimately terminating Plaintiff. The retaliation affected the Plaintiff's compensation, chances for promotion, terms, conditions, location, privileges of employment and job status.

328.   Not only did Allina unjustly terminate Mr. Fielding they reported him to the Minnesota Board of Nursing for the events that occurred while employed at Allina for "nurse practice situations."   The board determined "no actions were warranted" agreeing Mr. Fielding did not act inappropriately as management claimed he did.

329.   Allina wrongly retaliated against Plaintiff culminating in the wrongful and pretextual termination of Plaintiff's employment on January 16, 2020.

330.   As a direct and proximate result of Defendant's treatment of him, Fielding sustained damages in the form of loss of opportunity for advancement, lost income, lost profits, and reputation through the present date.   Further, Fielding incurred severe mental and emotional damage.

331.   Defendant's foregoing discrimination, harassment and retaliation based on his national origin was the direct and proximate cause of damage to Plaintiff in excess of $75,000.

SEVENTH CAUSE OF ACTION

INTERFERENCE WITH ECONOMIC ADVANTAGE
BY ALLINA DEFENDANT

332.   The foregoing paragraphs are re-alleged as set forth above and are incorporated herein by reference.

333.   The elements of tortious interference with economic advantage are as follows:

a.      The existence of a reasonable expectation of economic

advantage;

b.      The Defendant's knowledge of that expectation of economic

advantage;

c.      That the Defendant intentionally interfered with the Plaintiff's

reasonable expectation of economic advantage, and the

intentional interference with either independently tortious or in

violation of a state or federal statute or regulation;

d.      That in the absence of the wrongful act of the defendant it is

reasonably probable that the Plaintiff would have realized and

economic advantage or benefit; and

e.      That the Plaintiff sustained damages.

334.   Allina is responsible for its supervisors, manager, charge nurses, head
nurses and other employees because of Respondeat Superior.

335.   Allina with the aid of its employees, agents, managers, supervisors,
charge Nurses, head nurses and other employees Allina intentionally did acts to
interfere with Plaintiff economic advantage.

336.   Allina made false accusations against Plaintiff and placed or had placed
damaging documents in Plaintiff's employment file to induce or otherwise cause a
third person employer from being interested in hiring Plaintiff.   Defendant's

intentional acts caused damage that could prevent Plaintiff from acquiring or continuing the prospective relation.

337.   Allina intentionally interfered with the economic advantage of Plaintiff. It knew the importance of Plaintiff maintaining a good reputation as Registered Nurse and the need not to have false allegations related to him in the employment file.  Allina knew that it is common in the medical industry for a prospective employer to ask an applicant to sign a consent form so it could review his previous employment files and that if the employment file had write ups or corrective actions or other criticisms the employee would not likely be hired and therefore rendered unemployable.  By doing this he would in affect cause a blackballing of Plaintiff from future employment in the medical industry.  Allina did the foregoing acts to intentionally ruin Plaintiff's career and to make him unemployable to a prospective employer.

338.   Allina after wrongfully terminating Plaintiff intentionally with malice made false claims about him to a governmental or self-regulatory agency.

339.   Allina's conduct toward Plaintiff was different and more negative than to other employees of it.  Allina gave white employees different and better treatment than Plaintiff who is of African-American descent.   Allina's acts were done intentionally and with malice to harm the Plaintiffs economic advantage to among other things set her up for failure so he would either quit or give it a pre-textual

99

reason for firing him which would destroy his economic advantage.  Further, Allina put false things in his file in order to create a situation so that a future employer who wanted to look at his employment file would not hire him after reading the false information put in his file by it.  Allina's actions were without justification and greatly damaged Plaintiff economic advantage.

340.   Plaintiff had a reasonable expectation of economic advantage of getting hired by another public agency or private organization which has been severely damaged by Allina.

341.   Defendant intentionally and maliciously made false accusations against Plaintiff and took damaging actions against him that could make a potential employer fail to either hire him or later promote him to a higher position.  Allina's forgoing actions stated earlier in this complaint forced and continue to force Plaintiff into a position where if he is asked about his employment with Allina would have to answer questions about specific false accusations against him by Allina.  The listener might believe Allina's false accusations which would be highly damaging to him.

342.   Subsequent to leaving Allina Plaintiff was damaged by having to take a job at a lower rate of pay.  Further, the job he took has less potential for advancement.

343.   The foregoing acts by Allina were the direct and proximate cause of damage to Plaintiff.

344.   Plaintiff was damaged in excess of $75,000.

**WHEREFORE**, Plaintiff prays for the judgment of this Court awarding him the following relief.

A.   Awarding judgment against Defendant in excess of $75,000 for discrimination based on race.

B.   Awarding judgment against Defendant in excess of $75, 000.00 for discrimination based on color.

C.   Awarding judgment against Defendant in excess of $75,000 for discrimination based on national origin.

D.   Awarding judgment against Defendant in excess of $75,000 for discrimination based on race in violation of Minnesota law.

E.   Awarding judgment against Defendant in excess of $75,000 for discrimination based on color in violation of Minnesota law.

F.   Awarding judgment against Defendant in excess of $75,000 for discrimination based on national origin in violation of Minnesota law.

G.   Awarding judgment against Defendant in excess of $75,000 for wrongful interference with economic advantage.

H.   For such other and further relief which to the Court seems just and equitable.

DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues trial by jury.

Dated: May 13, 2021                    Neff Law Firm, P.A.

                                       */s/Fred L. Neff*
                                       Attorney for Fielding
                                       One Corporate Plaza, Ste. 390
                                       7400 Metro Boulevard
                                       Edina, MN  55439
                                       Telephone: (952) 831-6555
                                       Facsimile: (952) 831-2711
                                       Email: info@neff-law-firm.com

                                       *Attorney for Fielding*

                            Acknowledgment

     The undersigned hereby acknowledges that pursuant to Fed.R.Civ.P. Rule 11

and Minn. Stat. §549.211, the Court may impose sanctions if it finds a violation of

these sections.

Dated: May 13, 2021                    Neff Law Firm, P.A.

                                       *e/Fred L. Neff*
                                       Fred L. Neff, Atty. Reg. #77355
                                       Attorney for Fielding
                                       One Corporate Plaza, Ste. 390
                                       7400 Metro Boulevard
                                       Edina, MN  55439
                                       Telephone: (952) 831-6555
                                       Facsimile: (952) 831-2711
                                       Email: info@neff-law-firm.com